**UNITED STATES of America**

v.

**Drew B. MORVANT, D.D.S. et al.**

**Civ. A. No. 93–3251.**

United States District Court,
E.D. Louisiana.

Jan. 26, 1994.

---

Glenn Kenneth Schreiber, U.S. Attys. Office, New Orleans, LA, Sharon N. Perley, U.S. Dept. of Justice, Public Access Section, Civ. Rights Div., Washington, DC, for plaintiff U.S.

Stephen M. Pizzo, William Wesley Shaw, Jr., Blue, Williams & Buckley, Metairie, LA, for defendants Drew B. Morvant, D.D.S. et al.

PATRICK E. CARR, District Judge.

This matter is before the Court on defendant's motion to dismiss for failure to state a claim on which relief can be granted, and motion to strike certain monetary demands from plaintiff's prayer for relief. Determining in its discretion that oral argument is not necessary, the Court **CANCELS** the hearing previously scheduled, and for the reasons that follow, now **DENIES** the motions.

## BACKGROUND

Defendant Dr. Drew Morvant is a dentist who practices dentistry as a professional dental corporation. Dr. Morvant is the owner, president, and sole director of his professional dental corporation.

According to a complaint filed by the Attorney General of the United States, from April 1981 through January 1993, Mr. Ismael Pena sought and received routine dental care

from Dr. Morvant. The complaint alleges that in January of 1993, Dr. Morvant "became aware" that Mr. Pena was HIV positive, and in February of 1993, refused Mr. Pena further dental treatment because he was HIV positive. The complaint further alleges that Mr. Russel Hodgkinson, who is also HIV positive, made an appointment for an initial dental examination and dental cleaning at Dr. Morvant's office in June of 1993, but that he was refused treatment when he arrived for his appointment.

The United States sued Dr. Morvant for violations of the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. §§ 12101 et seq. The government charges that Dr. Morvant unlawfully discriminated against the two named individuals and other aggrieved persons who have tested positive for the HIV virus, in violation of title III of the ADA, and that the defendant engaged in a pattern or practice of discrimination within the meaning of the ADA. The complaint asks for declaratory relief, injunctive relief, monetary damages for the two named individuals and other aggrieved persons, and a civil penalty against Dr. Morvant.

## ANALYSIS

The Americans with Disabilities Act (ADA) was enacted by Congress "to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities". 42 U.S.C. § 12101(b). The ADA is divided into four subchapters; this lawsuit arises under the provisions and prohibitions contained in subchapter III, Public Accommodations and Services Operated by Private Entities, §§ 12181–12189.

The ADA prohibits discrimination by public accommodations as follows:

No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a). Included in the definition of "public accommodation" in that subchapter is "professional office of a health care provider". 42 U.S.C. § 12181(7). A "private entity" means "any entity other than a public entity...." 42 U.S.C. § 12181(6). The Department of Justice regulations promulgated to implement the ADA specifically include an individual with HIV disease (whether symptomatic or asymptomatic) as an individual with a disability under the ADA. 28 C.F.R. § 36.104.

## 1. MOTION TO DISMISS PURSUANT TO FRCP 12(b)(6)

■ Defendant argues that because he practiced dentistry as a professional dental corporation, he is not subject to individual liability, and cannot be sued personally. He is mistaken.

The ADA prohibits discrimination of the basis of disability by any "person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). Dr. Morvant's professional dental corporation operates a place of public accommodation as defined by the Act. Dr. Morvant, as the owner, president, and sole director of his professional dental corporation, owns and operates his dental practice. Dr. Morvant personally falls within the broad sweep of the ADA.

In first case to consider this issue under the ADA, the defendant, like Dr. Morvant, was the sole shareholder of the corporation that was alleged to have engaged in discriminatory practices, and was the person responsible for making the discriminatory decision on behalf of the employer corporation. *EEOC v. AIC Security Investigations, Ltd.*, 1993 WL 427454 (N.D.Ill. Oct. 21, 1993). After a comprehensive analysis of the issue, that court concluded that the remedial purposes of the ADA would be subverted if those persons most responsible for discriminatory acts and policies were shielded from personal liability by a corporate entity. *Id.* at *9.

In *Moss v. Ole South Real Estate, Inc.*, 933 F.2d 1300, 1312 (5th Cir.1991), (citations omitted) a black couple sued a real estate corporation and its owner and corporate officer in his individual as well as corporate capacity, for violations of federal civil rights

statutes. The Fifth Circuit held that when corporate officers directly participate in or authorize the commission of a wrongful act, even if the act is done on behalf of the corporation, they may be personally liable. *Id.* at 1312 (citing *Mozingo v. Correct Mfg. Corp.*, 752 F.2d 168, 173 (5th Cir.1985)). The Court noted that if the jury found the individual corporate officers directly participated in discrimination or authorized discrimination, they may be held personally liable. *Id.* If both the individual and the corporation may be liable, it is irrelevant if either or both parties are sued.

### 2. DEFENDANT'S MOTION TO STRIKE

Defendant moved to strike the government's demand for monetary damages for Ismael Pena because Mr. Pena is deceased, and for "other aggrieved persons" because the complaint does not identify those individuals, or allege any discriminatory acts against those individuals.

#### A. Mr. Pena

The government's complaint requests compensatory damages to Mr. Pena, a person allegedly injured by defendant's discriminatory conduct. The ADA authorizes the Attorney General to seek monetary damages on behalf of any person aggrieved by a defendant's discriminatory conduct. 42 U.S.C. § 12188(b)(2)(B).

■ When a federal civil rights statute is silent as to whether the government may seek damages on behalf of an aggrieved person who has died prior to the commencement of the civil action, 42 U.S.C. § 1988 directs the court to apply the law of the forum state. Section 1988 uses sweeping language, and was designed to remedy the deficiencies and effectuate the underlying purposes of federal civil rights statutes. *Brazier v. Cherry*, 293 F.2d 401, 408 (5th Cir.), *cert. denied*, 368 U.S. 921, 82 S.Ct. 243, 7 L.Ed.2d 136 (1961).

In *Robertson v. Wegmann*, 436 U.S. 584, 589, 98 S.Ct. 1991, 1995, 56 L.Ed.2d 554 (1978), the Court held that since 42 U.S.C. § 1983 was silent as to the issue of surviva-

bility, 42 U.S.C. § 1988 required the district court to apply the Louisiana survivorship law. *Id.* at 588, 98 S.Ct. at 1994. In that case, the Supreme Court affirmed the district court's dismissal of a Section 1983 claim when the plaintiff died before trial leaving no survivors as listed in the applicable Louisiana statute.

In *Overpeck v. Christ Episcopal Church*, 577 So.2d 364 (La. 1 Ct.App.1991), *writ denied*, 580 So.2d 925 (La.1991) the court found that discrimination against a person with AIDS is an "offense or quasi-offense" within the meaning of La.Civil Code Art. 2315.1, and the survivorship statute applied. This case interpreted the Louisiana anti-discrimination statute. The Fifth Circuit has stated that because a federal civil rights action arises from the defendant's violation of a duty imposed by federal law, that action should be characterized "as one sounding in tort—i.e., an 'offense or quasi-offense.'" *Page v. U.S. Industries, Inc.*, 556 F.2d 346, 352 (5th Cir.1977).

■ Louisiana Civil Code Art. 2315.1 provides that the right to recover damages for injuries caused by an offense or quasi-offense suffered by a person who dies survives for one year from the death of the deceased, in favor of the deceased survivors. Here, the government is in the position of seeking damages on behalf of Mr. Pena, therefore, on behalf of his succession survivors.

#### B. "Other aggrieved persons"

■ The defendant argues that the government's request for monetary damages for "other persons aggrieved" does not comport with the pleading requirements of FRCP 8(a), because he is unable to fashion a defense against a damage claim for unknown individuals allegedly injured by unspecified discriminatory acts. In essence, he claims he does not have "fair notice" of the claim and the grounds upon which it rests.

■ The complaint alleges that the defendant engaged in a "pattern or practice" of discrimination in violation of the ADA. 42 U.S.C. §§ 12188(b)(1)(B)(i) and (b)(2)(B).[1]

---

1. These sections provide:
   if the Attorney General has reasonable cause to believe that any person or group of persons is engaged in a pattern or practice of discrimi-

nation under this title, ... the Attorney General may commence a civil action in any appropriate United States district court.

By way of comparison, the Fair Housing Act and Title VII of the Civil Rights Act of 1964 also authorize compensatory damages or monetary awards respectively, for persons aggrieved by a pattern or practice of discriminatory conduct. *See* 42 U.S.C. §§ 3614(a), 3614(d)(1)(B), and 2000e–6. In *Teamsters v. United States,* 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977), the Court noted:

> [a]t the initial, "liability" stage of a pattern-or-practice suit the Government is not required to offer evidence that each person for whom it will ultimately seek relief was a victim of the employer's discriminatory policy. Its burden is to establish a prima facie case that such a policy existed.

*Id.,* 431 U.S. at 360, 97 S.Ct. at 1867. *See also United States v. Balistrieri,* 981 F.2d 916, 935–36 (7th Cir.1992), *cert. denied,* —— U.S. ——, 114 S.Ct. 58, 126 L.Ed.2d 28 (1993) ("nothing in the [Fair Housing Act] demands, or even implies that damages are proper only for people the government knows about at the time it files the complaint.") The government may properly seek monetary damages for initially unidentified persons aggrieved by acts pursuant to a discriminatory pattern or practice, in violation of the ADA.