142

Jack L. DAVOLL; Deborah A. Clair; and Paul L. Escobedo; on behalf of themselves and a class of persons similarly situated; Plaintiffs,

v.

Wellington WEBB, in his capacity as the Mayor of the City and County of Denver; the City and County of Denver; David L. Michaud, in his capacity as the Chief of the Denver Police Department; Elizabeth H. McCann, in her capacity as the Manager of Safety for the City and County of Denver; Civil Service Commission, for the City and County of Denver; Defendants.

No. 93–K–2263.

United States District Court, D. Colorado.

Feb. 24, 1995.

Craig C. Eley, Eley & Eley, David C. Feola, Denver, CO, Marilee E. Langhoff, Englewood, CO, for plaintiffs.

J. Wallace Wortham, Jr., Asst. City Atty., Denver, CO, for defendants.

## MEMORANDUM OPINION AND ORDER

KANE, Senior District Judge.

Before me is the motion of Plaintiffs Jack L. Davoll, Deborah A. Clair and Paul L. Escobedo to certify this action as a class action pursuant to Federal Rule of Civil Procedure 23 and to bifurcate this action into two trial phases pursuant to Rule 42(b). I deny the motion.

### I. Facts and Procedural Background

Plaintiffs bring this action seeking monetary damages, declaratory and injunctive relief pursuant to: (a) the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101–12213; (b) Title VII of the Civil Rights Act of 1964 (codified as amended at 42 U.S.C. §§ 2000e through 2000e–17); (c) 42 U.S.C. § 1983 and the Equal Protection and Due Process clauses of the U.S. Constitution as applied to Defendants through the Fourteenth Amendment to the U.S. Constitution. (Sec.Am.Compl. & Jury Demand ¶ 1.)

Plaintiffs were patrol officers for the Denver Police Department who sustained work-related injuries which rendered them unable to perform the essential functions of their jobs as police officers, i.e. the ability to make a forceful arrest and/or fire a weapon. The Denver Police Department assigned each of the Plaintiffs to temporary light duty positions.

When each Plaintiff's eligibility for light duty expired, a medical determination was made that he or she could not return to full duty and was to be given a limited duty assignment for an indefinite period of time. Each Plaintiff sought and was granted occupational disability retirement from the Fire and Police Pension Association.

In essence Plaintiffs allege Defendants have failed to accommodate them by providing permanent light duty positions and/or failing to reassign them to non-police jobs within the City. As a result, Plaintiffs seek recovery for personal injury and economic losses as well as injunctive and declaratory relief.

### II. Class Certification

#### A. General Principles

Plaintiffs must satisfy the requirements of Rule 23 in order to maintain a class action. Whether a class may be certified is in the discretion of the court. *Milonas v. Williams*, 691 F.2d 931, 938 (10th Cir.1982), *cert. denied*, 460 U.S. 1069, 103 S.Ct. 1524, 75 L.Ed.2d 947 (1983). In ruling on a motion for class certification, inquiry is limited to whether the requirements of Rule 23 have been satisfied. The merits of the action are not judged. *Joseph v. General Motors Corp.*, 109 F.R.D. 635, 637 (D.Colo.1986). On the other hand, in determining whether the requirements of Rule 23 have been met, "it is often necessary to analyze the substantive claims and defenses of the parties and the essential elements of those claims and defenses.... Nevertheless, there is a distinction between identifying the issues that the case will present for purposes of determining whether the requirements of Rule 23 have been met and deciding those issues on the merits." *Id.* at 637–38.

The party seeking certification of the class has the burden of proving each of the requisite elements of Rule 23. *Anderson v. City of Albuquerque*, 690 F.2d 796, 799 (10th Cir.1982). First, Plaintiffs must establish that the four requirements of Fed.R.Civ.P. 23(a) are satisfied, namely (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or

fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. These requirements are often referred to as numerosity, commonality, typicality, and adequacy of representation. Second, Plaintiffs must establish that the case fits within one of the three subcategories of Rule 23(b).

### B. *Application*

Rule 23(a)(1) provides that a class action may be maintained only if "the class is so numerous that joinder of all members is impracticable." To satisfy the requirements of Rule 23(a), Plaintiffs must first adequately define the class and then establish that it is so numerous that joinder of all members is impracticable.

 In determining whether the proposed class meets Rule 23(a)'s numerosity requirement, one must first determine whether the class is sufficiently defined so that potential class members can be identified. *Joseph,* 109 F.R.D. at 638; *see also Rodriguez v. Bar–S Food Co.,* 567 F.Supp. 1241, 1247 (D.Colo.1983). However, the class does not have to be so ascertainable that every potential member can be identified at the commencement of the action. *Joseph,* 109 F.R.D. at 639. Nevertheless, the requirement that there be a class is not satisfied unless the description of it is sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member. *Id.*

 Plaintiffs propose the following definition for the class:

> Former, present and future members of the Denver Police Department who have or will have disabilities; who have been or will be denied reasonable accommodation of their disabilities by defendants; who have been or will be retaliated against for assertion of ADA rights or opposition to discriminatory practices; who have been

or will be aggrieved by defendants' ongoing failure to implement the provisions of the ADA for Denver Police Officers; who have been or will be denied equal protection and due process of law through defendants' unequal implementation of the ADA in defendants' workforce and ongoing disparate treatment of police officers with disabilities and constructive discharge of police officers with disabilities.

(Sec.Am.Compl. & Jury Demand ¶ 34.)

Plaintiffs state they can reasonably identify the group of police officers who have been aggrieved by Defendants' practices through June 27, 1994, but not those who are presently subject to such practices or will be in the future.

Defendants maintain the proposed class is not definable. They state the defining issue is "whether defendants have had, have or will have a duty to reasonably accommodate individuals with disabilities, and if so what is the scope of the duty to accommodate." (Memo. Law Opp.Pls' Mot.Class Certif. & Trial Bifur. at 6–7.)

The term "disabilities" in the proposed class definition refers to the term "disability" as found in the ADA which prohibits discrimination "against a qualified individual with a disability because of the disability of such individual." 42 U.S.C. § 12112(a). A "qualified individual with a disability" is defined as an "individual with a disability who, with or without reasonable accommodation, can perform the essential function of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). This definition is substantially the same as that of an "individual with handicaps" (now an "individual with a disability") contained in the Rehabilitation Act of 1973, 29 U.S.C. § 706(8)(B).[1] The legislative history of the

---

1. The Rehabilitation Act, 29 U.S.C. § 706(8)(B), defines an "individual with a disability," originally termed an "individual with handicaps," as

a person "who (i) has a physical or mental impairment which substantially limits one or more of such person's major life activities, (ii) has a

ADA reflects that "Congress intended the relevant caselaw developed under the Rehabilitation Act may be generally applicable to the term 'disability' as used in the ADA." H.R.Rep. No. 485, Part 3, 101st Cong., 2d Sess. 50 (1990), *reprinted in* 1990 U.S.S.C.C.A.N. 267. *See also* 42 U.S.C. § 12117(b). Thus only those persons with a "disability" as defined in the ADA may state a claim under the act.

█ The determination of whether a person has such disability is to be decided on a case-by-case basis. *Welsh v. City of Tulsa, Okl.,* 977 F.2d 1415, 1417 (10th Cir.1992). Welsh had been denied employment as a firefighter with the City due to a minor residual sensory deficit in the ring and little fingers of his right hand. He claimed he was discriminated against on the basis of handicap protected by the Rehabilitation Act of 1973. The Tenth Circuit affirmed that "denial of a single job in a single field due to a physical condition does not establish that a person is perceived as having an impairment that substantially limits a life activity." *Id.* at 1417.

> Several factors are relevant to determining whether an impairment substantially limits an individual's employment potential. They include "(1) the number and type of jobs from which the impaired individual is disqualified, (2) the geographical area to which the individual has reasonable access, and (3) the individual's job expectations and training."

*Id.* at 1419 (citing *Jasany v. United States Postal Service,* 755 F.2d 1244, 1249 (6th Cir. 1985)) (numbering added).

In *Bolton v. Scrivner,* 36 F.3d 939, 944 (10th Cir.1994), the court held a work-related injury preventing an employee from performing his job as order selector in a grocery warehouse was not a substantial limitation in his major life activity of working, as required for an unlawful discharge claim under the ADA, absent evidence showing a significant restriction in ability to perform a class of jobs or broad range of jobs in various classes.

In *Forrisi v. Bowen,* 794 F.2d 931, 935 (4th Cir.1986), the court held an employer who

discharged an employee with acrophobia (fear of heights) because he could not climb ladders or stairs to certain heights, did not regard the employee as handicapped simply because he did not meet the demands of an integral part of his particular job. The court's comments emphasize the particularized definition of "disabled" in the Rehabilitation Act, and by derivation, in the ADA:

> The Rehabilitation Act assures that truly disabled, but genuinely capable, individuals will not face discrimination in employment because of stereotypes about the insurmountability of their handicaps. It would debase this high purpose if the statutory purpose available to those truly handicapped could be claimed by anyone whose disability was minor and whose relative severity of impairment was widely shared. Indeed, the very concept of an impairment implies a characteristic that is not commonplace and that poses for the particular individual a more general disadvantage in his or her search for employment.

*Id.* at 934.

In *Jasany v. United States Postal Service,* 755 F.2d 1244, 1250 (6th Cir.1985), the court held that, as a matter of law, an employee with strabismus ("crossed eyes") was not regarded as handicapped when he was fired from a position which his strabismus prevented him from properly performing. Again the court recognized the individualized nature of the inquiry into whether a disability exists:

> The burden is on the plaintiff to establish the existence of an impairment that substantially limits a major life activity as an element of the plaintiff's prima facie case. Once a prima facie case has been presented, the burden shifts to the defendant employer to demonstrate that challenged criteria are job related and required by business necessity, and that reasonable accommodation is not possible.

*Id.* at 1249–50 (footnote omitted).

In *Chandler v. City of Dallas,* the court held two subclasses of plaintiffs (those with substandard vision and those with insulin dependent diabetes) had been improperly

record of such an impairment, or (iii) is regarded as having such an impairment."

certified because "the determinations of whether an individual is handicapped or 'otherwise qualified' are necessarily individualized inquiries." 2 F.3d 1385, 1396 (5th Cir. 1993).

In the case at bar, the affidavit of each named Plaintiff merely alleges he or she suffered work-related injuries which impaired the ability to work at a previously held position but not to perform the essential functions of other positions within the police department. (Pls' Mot.Class Certif. & Bifur.Trial, Ex. A, ¶ 2; Id., Ex. B, ¶ 2; Id., Ex. C, ¶ 2.) It does not follow per se that any of these individuals falls within the definition of having an ADA "disability."

██ The mere fact that each Plaintiff sustained work-related injuries resulting in physical impairments, being placed in a light duty position and later retiring would not mean he or she had a "disability" as defined in the ADA. Various factors would have to be considered in determining whether each named Plaintiff and each member of the putative class has or will have a "disability" for the purposes of an ADA claim. Such "necessarily individualized inquiries" are best suited to a case-by-case determination. Chandler, 2 F.3d at 1396.

Because Plaintiffs' definition of the proposed class is untenable, class certification is inappropriate in the instant case. Absent a cognizable class, determining whether Plaintiffs or the putative class satisfy the other Rule 23(a) and (b) requirements is unnecessary.

### III. Conclusion

Plaintiffs' motion for class certification is DENIED; so, too, is Plaintiffs' motion for trial bifurcation.