**UNITED STATES of America, Plaintiff,**

· v.

**The CITY AND COUNTY OF DENVER; The Denver Police Department; and the Civil Service Commission for the City and County of Denver, Defendants.**

**Civil Action No. 96–K–370.**

United States District Court,
District of Colorado.

Oct. 10, 1996.

Henry L. Solano, U.S. Attorney, District of Colorado, Denver, CO, Joan A. Magagna, Eugenia Esch, Sheila M. Foran, Disability Rights Section, Civil Rights Division, U.S. Department of Justice, Washington, DC, for plaintiff.

J. Wallace Wortham, Jr., Assistant City Attorney, Denver, CO, for defendants.

## MEMORANDUM OPINION AND ORDER ON MOTIONS FOR SUMMARY JUDGMENT

KANE, Senior District Judge.

This is a case of first impression in this circuit concerning the burden of proof in a pattern or practice suit under the Americans with Disabilities Act of 1990, ("ADA"), 42 U.S.C. § 12101 *et seq.* I hold the burden is the same as. in a "pattern or practice" suit brought by the United States in a case under Title VII of the Civil Rights of Act of 1964, 42 U.S.C. § 2000e *et seq.*

On February 15, 1996, the United States filed the subject lawsuit "to enforce the provisions of titles I and II of the Americans with Disabilities Act of 1990, ("ADA"), 42 U.S.C. § 12111, *et seq.*, and 42 U.S.C. § 12131, *et seq.*, and the implementing regulations, 29 C.F.R. 12133 Part 1630 and 28 C.F.R. Part 35." (Compl. ¶ 1.)

The complaint describes the employment of Jack L. Davoll with the Denver Police Department, his injuries, his being placed on "limited duty," and his termination in April 1993 with the direction to apply for disability retirement. (*Id.* ¶¶ 10–14.) It alleges further that Davoll is a "qualified individual with a disability" as defined in the ADA, (*id.* ¶ 16), and that he and "other qualified individuals with disabilities" who have been employed by Defendants as police officers and who have become disabled "have similarly been denied reassignment to available positions for which they are qualified with the Police Department or within the City of Denver," (*id.* ¶ 17).

The United States asserts Defendants "have pursued and continue to pursue policies and practices that discriminate in employment on the basis of disability in violation of Section 102 of title 1 of the ADA, 42 U.S.C. § 12112 ... and Section 202 of title II of the ADA, 42 U.S.C. § 12132...." (*Id.*

¶ 18.) It maintains such "acts, omissions, policies and practices of [Defendants] constitute a pattern or practice of resistance to the full enjoyment by persons with disabilities of their rights to equal employment opportunities without discrimination based on disability in violation of Section 107(a) of title I of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Section 707 of Title VII, 42 U.S.C. § 2000e–6." (*Id.* ¶ 19.)

The government seeks an order declaring Defendants have violated Titles I and II of ADA, and enjoining them from engaging in discriminatory practices against employees with disabilities based on their disabilities and specifically from, *inter alia*, "[f]ailing or refusing to award make whole relief to Jack L. Davoll and similarly situated individuals...." (*Id.* at 6.)

On June 7, 1996, I denied Defendants' motion to dismiss. *See United States v. City and County of Denver*, 927 F.Supp. 1396 (D.Colo.1996).

On August 15, 1996, the United States' Motion for Summary Judgment on Liability under Title I in Civil Action No. 96–K–370 and Defendants' Motion for Summary Judgment were filed.

### I. *Standard for Motion for Summary Judgment.*

Under Federal Rule of Civil Procedure 56(c), a court may grant summary judgment where there is no issue of material fact and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). The burden of establishing the non-existence of a material fact is initially on the moving party. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986), *Thrifty Rent–A– Car Sys., Inc. v. Brown Flight Rental One Corp.,* 24 F.3d 1190, 1194 (10th Cir.1994). When the moving party has met its initial burden, it then shifts to the non-moving party to establish that there is a triable issue of fact. *Id.* A triable issue of fact exists where

"there is sufficient evidence favoring the non-moving party for a jury to return a verdict in favor of that party. *Merrick v. Northern Natural Gas Co.,* 911 F.2d 426, 429 (10th Cir.1990). The facts presented, and the appropriate inferences that may be drawn from them, must be construed in the light most favorable to the non-moving party. *Anderson,* 477 U.S. at 247–48, 106 S.Ct. at 2509–10. However, in the face of a properly supported motion for summary judgment, the nonmoving party may not rely on unsupported allegations without "any significant probative evidence tending to support the complaint." *Id.* at 249, 106 S.Ct. at 2510.

### II. *Defendants' Motion for Summary Judgment.*

Defendants request their Motion for Summary Judgment filed on February 1, 1996 in Civil Action No. 93–K–2263, *Davoll v. Webb,* be fully incorporated by reference as to the claims of the United States "now consolidated herein.¹"

The United States, in opposition, incorporates its memorandum in support of its motion for summary judgment on liability under Title I in 96–K–370 and its Memorandum as *Amicus Curiae* Opposing Defendants' Motion for Summary Judgment in 93–K–2263.

Defendants' summary judgment motion in 93–K–2263 seeks to dismiss the individual defendants and the Civil Service Commission. This aspect of the motion is applicable here only insofar as the Civil Service Commission is concerned because no individual defendants are named in 93–K–370. In that case, I have dismissed the Civil Service Commission. I make the same ruling here.

Defendants' motion in 93–K–2263 also seeks judgment on the ADA claim in that case, asserting Plaintiffs have not met the administrative prerequisites to bringing an individual ADA action. I have already determined that the United States had met the procedural requisites for filing a claim under Titles I and II of the ADA. *See United*

---

1. In fact, Magistrate Judge Pringle's Courtroom Minutes of June 25, 1996 state: "Cases consolidated for the October trial date. U.S. Department of Justice (96–K–370) will go to trial with case 93–K–2263 on the issue of liability only. Discovery schedule for case 96–K–370 will proceed on schedule with case 93–K–2263." The cases have not been consolidated for all purposes but for the purposes of trial on the issue of liability.

*States v. City and County of Denver*, 927 F.Supp. 1396 (D.Colo.1996).

Defendants' motion in 93–K–2263 also seeks judgment on the grounds that the plaintiffs in that case are not "otherwise qualified individuals" within the meaning of the ADA. This issue is addressed below vis-a-vis the United States Motion for Summary Judgment where, it argues, it is unnecessary for the United States at this liability stage, to show that any individuals are "otherwise qualified individuals" in this pattern or practice suit. I agree with the United States and therefore deny this aspect of the motion in this case.

Finally, judgment in 93–K–2263 is sought on the plaintiffs' 42 U.S.C. § 1983 claim. No such claim is brought in 96–K–370.

For the aforesaid reasons, I grant Defendants' Motion for Summary Judgment only insofar as it seeks dismissal of the Civil Service Commission for the City and County of Denver. I deny the motion in all other respects.

### III. *United States' Motion for Summary Judgment on Liability under Title I in Civil Action No. 96–K–370.*

In this motion, the United States seeks judgment on the issue of liability in its claim under Title I of the ADA, namely that the Defendants' policy results in a pattern or practice of employment discrimination against individuals with disabilities. Specifically, the United States asserts, the policy precludes Defendants from making "reasonable accommodation" to the known physical limitations of qualified individuals with disabilities in violation of 42 U.S.C. § 12112(b)(5)(A).

For the enforcement of Title I of the ADA, Congress adopted the powers, remedies and procedures from Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, which prohibits discrimination in employment on the basis of race, color, religion, sex, and national origin.[2]

The two provisions of Title VII (§§ 706 and 707) authorize the Attorney General to bring suits against public employers such as the Defendants in this case. 42 U.S.C. §§ 2000e–5(f)(1), 2000e–6. In this suit, the United States invokes § 107, 42 U.S.C. § 2000e–6. (Compl. ¶ 2.) That section provides in pertinent part:

> Whenever the Attorney General has reasonable cause to believe that any person or group of persons is engaged in a pattern or practice of resistance to the full enjoyment of any of the rights secured by this subchapter; and that the pattern or practice is of such a nature and is intended to deny the full exercise of the rights herein described, the Attorney General may bring a civil action in the appropriate district court of the United States....

42 U.S.C. § 2000e–6(a). The section does not require a specific complaint or a referral from the EEOC as a condition precedent to a lawsuit, nor does it require the Attorney General to follow procedures established by the EEOC before initiating suit. *United States v. Allegheny–Ludlum Ind.; Inc.*, 517 F.2d 826, 843 (5th Cir.1975), *cert. denied*, 425 U.S. 944, 96 S.Ct. 1684, 48 L.Ed.2d 187 (1976); *United States v. New Jersey*, 473 F.Supp. 1199, 1204–05 (D.N.J.1979).[3]

The United States points out that on July 1, 1996, Magistrate Judge Bruce Pringle denied Defendants' Motion for Reconsideration

---

**2.** Title I of the ADA states:

The powers, remedies, and procedures set forth in sections 2000e–4, 2000e–5, 2000e–6, 2000e–8, and 2000e–9 of this title [§§ 705, 706, 707, 709 and 710 of the Civil Rights Act of 1964] shall be the powers, remedies, and procedures this subchapter provides to the Commission, to the Attorney General, or to any person alleging discrimination on the basis of disability in violation of any provision of this chapter, or regulations promulgated under section 12116 of this title [§ 106] concerning employment.

42 U.S.C. § 12117(a).

**3.** This is in contrast to § 706, 42 U.S.C. § 2000e–5, designed to vindicate individual instances of discrimination, which empowers the Attorney General to sue public employers only after an individual has filed a charge with the EEOC, that agency has investigated, and made a finding of reasonable cause and been unable to conciliate the charge. The EEOC has the power to sue private employers but must refer charges against public employers to the Attorney General who may then sue to obtain relief on behalf of individual victims of discrimination. 42 U.S.C. § 2000e–5(f).

of Order to Consolidate Trials and Bifurcate the Trial of 96–K–370 and Brief in Support. On June 25, 1996, the magistrate judge ordered this case and Civil Action No. 93–K–2263 consolidated for the October trial date and ordered that this case would go to trial with case 93–K–2263 on the issue of liability only. Thus, in the first stage of trial of the Title I portion of the United States' action, set for trial later this month, Defendants' liability in this action will be addressed. If the United States is successful at this stage, there will be a second stage of this case which will address remedial relief.

■ The government asserts at the initial liability stage of its pattern or practice suit, it is not required to offer evidence that each person for whom it will ultimately seek relief was a victim of Defendants' discriminatory policy. Its position is that its burden at this stage is to establish a prima facie case that such policy exists and that questions of individual relief such as the employment status of an individual, rejection of his or her request for reassignment to vacant positions, and entitlement to relief are deferred until the remedial phase and are undertaken only if the court finds Defendants violated Title I.

The United States relies on *International Brotherhood of Teamsters v. United States,* concerning an action for employment discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e. There, the Court noted:

> The plaintiff in a pattern-or-practice action is the Government, and its initial burden is to demonstrate that unlawful discrimination has been a regular procedure or policy followed by an employer or group of employers. At the initial, "liability" stage of a pattern-or-practice suit the Government is not required to offer evidence that each person for whom it will ultimately seek relief was a victim of the employer's discriminatory policy. Its burden is to establish a prima facie case that such a policy existed.

431 U.S. 324, 360, 97 S.Ct. 1843, 1867, 52 L.Ed.2d 396 (1977) (citation omitted). Since Title I of the ADA adopts Title VII's powers, remedies, and procedures, the United States asserts one should look to *Teamsters* and

cases following it when determining its burden of proof at the liability phase of this case under the ADA.

Thus, the government does not discuss the identity of all of the victims of Defendants' discriminatory policy and practices and the issues surrounding relief in its motion for summary judgment which addresses only the question of Defendants' liability on the Title I pattern or practice claim.

Defendants respond that, even though this is a pattern or practice case, the United States is required to satisfy the same requirements as an individual plaintiff must satisfy when bringing an ADA claim, namely "(1) that he is a disabled person within the meaning of the ADA; (2) that he is qualified, that is, with or without reasonable accommodation (which he must describe), he is able to perform the essential functions of the job; and (3) that the employer terminated him because of his disability." *White v. York Int'l Corp.,* 45 F.3d 357, 360–61 (10th Cir. 1995).

Defendants challenge the United States' reliance on *Teamsters,* a pattern or practice case brought under Title VII. Title VII, Defendants argue, defines the classes of individuals protected by its provisions, namely by "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2. Whereas membership in these classes is easily established, state Defendants, membership in the class protected by the ADA is not so easily established, necessitating a multi-prong test.

Defendants point out, in *Teamsters,* the United States had to prove that the protected classes of plaintiffs, Black and Hispanic surnamed truck drivers, were affected by a policy giving them lower paying, less desirable jobs as servicemen or local drivers. They argue, so too, here, the United States must show there is a protected class of individuals, namely "qualified individuals with disabilities," who are affected by Defendants' non-reassignment policies, i.e., that without proof that there are "qualified individuals with disabilities," affected by the policies, there can be no ADA violation and the United States is not entitled to summary judgment.

In reply, the United States asserts *White* and other cases involving individual plaintiffs' claims of discrimination under either ADA or the Rehabilitation Act of 1973 are inapposite here and do not establish the plaintiff's burden of proof at the liability phase of a case alleging a pattern or practice of discrimination.

The United States does not quarrel with Defendants' view that a highly individualized assessment is necessary in order to determine a potential victim's status as a "qualified individual with a disability" and that it must show that each person on whose behalf it is seeking relief is, in fact, a "qualified individual with a disability." However, it disagrees with Defendants about the point in time at which such a showing must be made. It argues evidence that a particular person is a "qualified individual with a disability" is necessary not to show liability, but to show that such person is among those individuals for whom relief may be sought, i.e, is a member of the class of victims of discrimination. Such issue, the United States argues, is always resolved at the remedial stage of a bifurcated action, not at the liability stage. *See Teamsters,* 431 U.S. at 361, 97 S.Ct. at 1867–68.

I find no Tenth Circuit authority addressing the issue of the burden of proof in a pattern or practice suit under the ADA. However, this circuit has followed the distinction between the burdens of individual plaintiffs in a Title VII case and the United States' burden of proof in a pattern or practice case:

> In a true "pattern and practice" suit, the government is not required to show individual discrimination with respect to each person for whom it seeks relief when establishing its prima facie case. In seeking to protect the public's interest, it is sufficient that the government show specific evidence of company discrimination regarding some of the employees that it seeks to represent, and that a broad-based policy of employment discrimination existed.

*Coe v. Yellow Freight System, Inc.,* 646 F.2d 444, 449 n. 1 (10th Cir.1981) (citations omitted).

Nor do I find case law in support of Defendants' argument distinguishing the nature of the burden of proof in a pattern or practice suit under the ADA from that in such suit under Title VII. I do find authority supporting the United States' position that the burden of proof at the liability stage in such suit under the ADA is the same as that under Title VII.

In *United States v. Morvant,* 843 F.Supp. 1092 (E.D.La.1994) the government alleged, *inter alia,* that Dr. Morvant, a dentist, engaged in a pattern or practice of discrimination within the meaning of the ADA against individuals who had tested positive for the human immunodeficiency virus ("HIV"). The court found that "[t]he government may properly seek monetary damages for initially unidentified persons aggrieved by acts pursuant to a discriminatory pattern or practice, in violation of the ADA." 843 F.Supp. at 1095. Citing the Court's comments in *Teamsters,* 431 U.S. at 360, 97 S.Ct. at 1867, the *Morvant* court held that, at the liability stage of a pattern-or-practice lawsuit under the ADA, the government's burden is to establish a prima facie case that a discriminatory policy existed and it need not offer evidence that each individual for whom it will ultimately seek relief was a victim of the policy.

I see no reason to differ, particularly since Title I of the ADA adopts Title VII's powers, remedies, and procedures. I therefore agree with the United States that to prove a prima facie case of liability here, it must establish (a) the defendant is a covered entity under Title I; (b) defendants' policy or practice barring the reassignment of officers with disabilities to vacant positions for which they are qualified is undisputed; and (c) defendants' policy or practice discriminates against "qualified individuals with disabilities" covered by Title I.

It is undisputed that Defendants are covered entities within the meaning of the ADA, 42 U.S.C. § 12111(2) and the implementing regulation, 29 C.F.R. § 1630.2(b) (1995).

Defendants admit they have a policy and practice that prohibits reassignment of offi-

cers who develop disabilities to Career Service or non-sworn (civilian) vacancies.[4]

■ They maintain, however, that their policy does not discriminate against "qualified individuals with disabilities" because (a) there is no accommodation to the job of police officer, (b) transfer to the Career Service is not a reasonable accommodation; and (c) requiring reassignment to the Career Service creates undue hardship.

The ADA defines "qualified individual with a disability" as "an individual with a disability, who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8) (emphasis added).

The Act states "reasonable accommodation," may include:

job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

42 U.S.C. § 12111(9)(B). *See also* 29 C.F.R. § 1630.2(*o*)(2)(ii) (1995).

Defendants assert there is no reasonable accommodation to make for a police officer who can no longer make a forcible arrest or fire a weapon. I have already discussed this issue in my memorandum concerning Defendants' motion for summary judgment in 93–K–2263. There, I concluded the City had failed to show it was entitled to judgment on the ADA cause of action on the basis that each plaintiff was not a "qualified individual with a disability" within the meaning of the ADA.

I stated the term included "an individual with a disability, who, with or without reasonable accommodation, can perform the es-

sential functions of the employment position that such individual holds or desires," 42 U.S.C. § 12111(8), and "reasonable accommodation" may include "reassignment to a vacant position," 42 U.S.C. § 12111(9)(B). This, I concluded could include a non-patrol vacant position, not having as an essential function, the power to make a forcible arrest or fire a weapon.

Discrimination under the ADA includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability ... unless [the employer] can demonstrate that the accommodation would impose undue hardship on the operation of the business of [the employer]." 42 U.S.C. § 12112(b)(5)(A).

■ The United States urges that permitting officers with disabilities to transfer to Career Service positions for which they are qualified is a reasonable change in the City's regular reassignment policy and Defendants cannot establish the affirmative defense of "undue hardship."

Defendants assert transfer to the Career Service is not a reasonable accommodation because the City does not reassign non-disabled police officers to non-police jobs on the payroll and the ADA is not intended to give persons with disabilities preferential treatment. *See Emrick v. Libbey–Owens–Ford Co.*, 875 F.Supp. 393, 398 (E.D.Tex.1995). I disagree and find *Emrick* wrongly decided insofar as it can be read to support this proposition.

■ If reassignment is only required where a reassignment policy already exists for all employees, there would be no need for the ADA to provide that it be available for people with disabilities. To the contrary, the ADA requires employers to move beyond the traditional analysis used to appraise non-disabled workers and to consider reassignment to a vacant position as a method of enabling a disabled worker to do the job without creat-

---

**4.** The Denver Police Department ("DPD") is contained within the Department of Safety of the City of Denver. The Department of Safety has two separate personnel systems: the Classified Service and the Career Service. All sworn members of the DPD, regardless of their particular rank, assignment or job duties, are classified within the Classified Service as "patrol officers." Non-sworn or "civilian" positions within the DPD, such as lab technician and dispatcher are classified within the Career Service.

ing undue hardship. *See, e.g., Leslie v. St. Vincent New Hope, Inc.,* 916 F.Supp. 879, 887 (S.D.Ind.1996).

Defendants also argue the City's Charter bars transfers and reassignments between the Classified and the Career Services. They do not however cite any specific provision in the Charter which expressly prohibits reassignment between the two personnel services. Even if such provision exists in the Charter, it would be preempted by the ADA, which specifically directs employers to modify existing practices and policies which do not conform with it.

The United States asserts here, the employer, the City and County of Denver, has a regular practice or policy of reassignment in that both the Career Service and Classified Service personnel systems have transfer policies that allow non-disabled employees to transfer to other positions of the same or similar classifications. Further, the City has a separate disability transfer policy for Career Service employees. Thus, the government argues, the ADA would not require the creation of a reassignment policy where none existed before, but only the modification of practices that prohibit transfers across personnel systems.

Defendants contend allowing police officers to transfer to Career Service vacancies for which they are qualified would require the City to "completely modify its existing personnel systems; it is simply an undue hardship." (Defs.' Opp'n Pl. United States' Mot. Summ. J. and Br. Supp. at 13.) They state the City's current policy does not allow for transfer between the Civil Service and the Career Service and there is no alternative employment reasonably available to disabled police officers under the City's existing policies. Moreover, "[r]equiring the City to alter its Charter, change its Career Service Authority merit system of filling vacancies, and transfer disabled police officers into vacant Career Service positions would require fundamental alteration in the nature of the City's personnel program." *Id.* at 14.

Defendants argue an accommodation may be an undue burden to the City if it requires a fundamental alteration in the nature of the City's program, citing *Barth v. Gelb,* 2 F.3d 1180, 1187 (D.C.Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1538, 128 L.Ed.2d 190 (1994). Notably, *Barth* concerned an action under the Rehabilitation Act, which, unlike the ADA, did not expressly include reassignment as a potential accommodation.

The government asserts Defendants fail to explain how the transfer an average of four officers a year into a 9,500 employee organization (Career Service) would require the City to modify completely its personnel system.[5] The only argument offered by Defendants regarding the impact of transferring police officers with disabilities is that it would affect the Career Service's "merit system," (Defs.' Opp. Pl. Mot. Summ. J. at 12), in that Career Service employees "rely upon the meritocracy to ensure fairness," *id.* Defendants do not, however, explain how the transfer of police officers to vacant positions for which they are qualified, as required by the ADA, would undermine this "meritocracy." [6] Nor do they provide specific information regarding the effect this transfer would have on the operation of the personnel systems. Defendants' argument indeed has a hollow ring.

The United States iterates the only defense available to a reasonable accommodation claim is "undue hardship," which Defendants cannot establish. Under the ADA, "undue hardship" is "an action requiring significant difficulty or expense." 42 U.S.C. § 12111(10)(A). Determination of whether an accommodation would cause an employer "undue hardship," is informed by consider-

---

**5.** It is undisputed that an average of four police officers retire on occupational disability annually. It is further undisputed that, as of July 1996, the Career Service had 8,000 full-time employees and 1,500 temporary employees.

**6.** Citing cases involving collective bargaining agreements, Defendants attempt to equate the rights of Career Service employees to those of employees under such agreements. However, this case does not involve a collective bargaining agreement, nor do the Career Service rules require hiring agencies to select the top candidate, or any candidate, from the eligibility lists for Career Service positions certified by the Career Service Authority. Accordingly, I do not find the cases cited to be apposite.

ation of a number of statutory and regulatory factors. These include:

(i) The nature and net cost of the accommodation needed under this part, taking into consideration the availability of tax credits and deductions, and/or outstanding funding;

(ii) The overall financial resources of the facility or facilities involved in the provision of the reasonable accommodation, the number of persons employed at such facility, and the effect on expenses and resources;

(iii) The overall financial resources of the covered entity, the overall size of the business of the covered entity with respect to the number of its employees, and the number, type and location of its facilities;

(iv) The type of operation or operations of the covered entity, including the composition, structure and function of the workforce of such entity, and the geographic separateness and administrative or fiscal relationship of the facility or facilities in question to the covered entity; and

(v) The impact of the accommodation upon the operation of the facility, including the impact on the ability of other employees to perform their duties and the impact on the facility's ability to conduct business.

29 C.F.R. § 1630.2(p) (1995). *See also* 42 U.S.C. § 12111(1)(B).

The Interpretive Guidance on Title I of the ADA, contained in the appendix to the regulations provide further direction as to how to determine whether a particular accommodation will impose an undue hardship on an employer:

[A]n employer cannot simply assert that a needed accommodation will cause it undue hardship, as defined in § 1630.2(p), and thereupon be relieved of the duty to provide accommodation. Rather, an employer will have to present evidence and demonstrate that the accommodation will, in fact, cause it undue hardship. Whether a particular accommodation will impose an undue hardship for a particular employer is determined on a case by case basis.

29 C.F.R. § 1630.15(d) (Appendix to Part 1630—Interpretive Guidance) (1995).

■ The asserted grounds relied on by the Defendants do not comport with those embodied in the statutory and regulatory schemes governing such claims. *See* 42 U.S.C. § 12111(10)(B); 29 C.F.R. § 1630.2(p) (1995). Nor has the City presented evidence and demonstrated that the accommodation will, in fact, cause it undue hardship.

The clear implication of the ADA's statutory and regulatory language with regard to both reasonable accommodation and undue hardship is that an employer will violate the ADA by rejecting a worker with a disability, or a proposed accommodation, without first conducting an analysis to determine whether the proposed accommodation is reasonable and whether it really presents an undue hardship.

Barbara A. Lee, *Reasonable Accommodation Under the Americans with Disabilities Act: The Limitations of Rehabilitation Act Precedent,* 14 Berkeley J.Empl. & Lab.L. 202, 219 (1993). "In order to withstand judicial scrutiny, "the employer's undue hardship defense will have to have a strong factual basis and be free of speculation or generalization about the nature of the individual's disability or the demands of a particular job." *Id.* at 250.

I conclude the ADA's reasonable accommodation requirement includes reassignment and imposes a duty on employers to consider that avenue. Here, the City has not considered reassignment of disabled police officers to Career Service positions because it maintains its policy is not to transfer disabled police officers or other members of the Classified Service to the Career Service. This is in violation of ADA's reasonable accommodation requirement.

Nor have Defendants explained how the transfer of four officers a year into a 9,500 employee organization (Career Service) would require the City completely to modify its personnel system, causing undue hardship. In short, the City offers no evidence that it has conducted an analysis to determine whether the proposed accommodation is reasonable and whether it actually presents an undue hardship.

In the circumstances, I conclude the United States has succeeded in establishing that

the City and County of Denver's policy or practice barring the reassignment of police officers with disabilities to vacant positions for which they are qualified discriminates against "qualified individuals with disabilities" covered by Title I of the ADA. I further conclude the City has failed to produce evidence from which a reasonable trier of fact could find that accommodating such individuals would cause it an undue hardship.

I therefore grant the United States Motion for Summary Judgment on Liability under Title I in Civil Action No. 96–K–370.

## IV. Conclusion.

For the aforesaid reasons, I grant Defendants' Motion for Summary Judgment only insofar as it seeks dismissal of the Civil Service Commission for the City and County of Denver. I deny the motion in all other respects.

I further grant the United States Motion for Summary Judgment on Liability under Title I in Civil Action No. 96–K–370. Accordingly,

IT IS ORDERED THAT Defendants' Motion for Summary Judgment is GRANTED insofar as it seeks dismissal of the Civil Service Commission for the City and County of Denver and DENIED in all other respects;

IT IS FURTHER ORDERED THAT the United States Motion for Summary Judgment on Liability under Title I in Civil Action No. 96–K–370 is GRANTED.