**Jack L. DAVOLL; Deborah A. Clair; and Paul L. Escobedo; Plaintiffs,**

**v.**

**Wellington WEBB, in his capacity as the Mayor of the City and County of Denver; The City and County of Denver; David L. Michaud, in his capacity as the Chief of the Denver Police Department; Elizabeth H. McCann, in her capacity as the Manager of Safety for the City and County of Denver; Civil Service Commission, for the City and County of Denver; Defendants.**

**UNITED STATES of America, Plaintiff,**

**v.**

**The CITY AND COUNTY OF DENVER and The Denver Police Department; Defendants.**

**Civil Action Nos. 93–K–2263, 96–K–370.**

United States District Court,
D. Colorado.

Feb. 28, 1997.

David C. Feola, Craig C. Eley, Denver, CO, Marilee E. Langhoff, Littleton, CO, for Jack L. Davoll, Deborah A. Clair and Paul L. Escobedo.

Eugenia Esch, Sheila M. Foran, U.S. Department of Justice, Civil Rights Division, Disability Rights Section, Washington, DC, for U.S.

J. Wallace Worthham, Jr., Assistant City Attorney, Denver, CO, for defendants.

## MEMORANDUM OPINION AND ORDER ON INJUNCTIVE RELIEF

KANE, Senior District Judge.

Pending for determination is the November 22, 1996 United States' Motion for an

Injunctive Order and a January 6, 1997 addendum to that motion. I deny the motion without prejudice to the right to file a renewed request for injunctive relief at the conclusion of the remedial phase of Civil Action No. 96–K–370.

## I. *Background.*

The United States asserts two claims against Defendants, The City and County of Denver and the Denver Police Department. The first is that Defendants' policy of prohibiting reassignment of police officers with disabilities to vacant jobs within the City's Career Service Personnel system for which they are qualified constitutes a "pattern or practice" of discrimination in violation of Title I of the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12111, *et seq.* This claim was bifurcated into a liability and a remedial stage for discovery and trial.

The liability phase concluded on October 10, 1996, when I granted the United States' Motion for Summary Judgment on Liability under Title I in Civil Action No. 96–K–370. *See United States v. City & County of Denver,* 943 F.Supp. 1304, 1313 (D.Colo.1996).

On February 11, 1997, I entered an Order of Stage II Discovery Schedule for the remedial stage of this case, during which the United States intends to identify all individuals who have been injured as a result of Defendants' proven discriminatory "pattern or practice."

The United States also asserts a claim on behalf of Jack L. Davoll under Title II of the ADA, 42 U.S.C. § 12131 *et seq.,* alleging that Defendants discriminated against Davoll by refusing to reassign him to a vacant Career Service position for which he was qualified, after he became unable to perform the essential functions of his police officer position due to his disability. The Title II claim was consolidated for trial with Civil Action No. 93–K–2263, in which Davoll and two other former Denver police officers, Deborah Clair and Paul Escobedo (collectively "the Private Plaintiffs") allege Defendants violated Title II of the ADA by denying them reassignment.

These claims were tried and, on November 13, 1996, a jury rendered verdicts in favor of all Plaintiffs and awarded a total of $800,000 in compensatory damages. I have yet to determine the equitable relief to which Davoll, Clair and Escobedo are entitled.[1]

## II. *United States' Motion for an Injunctive Order.*

On October 17, 1996, after I had issued the summary judgment opinion on the United States' Title I claim, but before the commencement of trial on the Title II claims, the United States filed its Motion for an Injunctive Order. The motion requested me to enjoin Defendants from (i) subjecting qualified individuals with disabilities to discrimination based on disability in violation of the ADA; (ii) failing or refusing to make reasonable accommodations, including reassignments to vacant positions, to the known physical or mental limitations of otherwise qualified individuals with disabilities who are employees in the Denver Police Department; (iii) denying employment opportunities to employees who are otherwise qualified individuals with disabilities based on the need to make reasonable accommodation to the physical or mental impairments of the employees; (iv) failing or refusing to award whole relief to individuals who have suffered loss as a result of the discriminatory policies and practices as alleged in the complaint; and (v) retaliating against any person who complains about discrimination or who has participated in or cooperated with the initiation, investigation, litigation or administration of this case.

On November 4, 1996, I denied the United States' motion for an injunction as premature, but invited it to renew its request following trial of the Title II claims. (Tr. Trial, Nov. 4, 1996, at 5–6.) On November 22, 1996, the United States filed a second Motion for an Injunctive Order and, on January 6, 1997, an addendum to that motion, requesting the same relief as in the initial motion.

Defendants object to the granting of the injunction sought at this time. They argue the prerequisites for an injunction are not present because the United States cannot claim it will likely prevail on the merits with

---

1. As of this date, the issue is not fully briefed.

respect to unknown individuals that it seeks to represent, nor that such individuals will suffer irreparable injury if the injunctive order is not issued.

Defendants further assert the requested relief is vague and overbroad in that it gives no guidance as to the specific act or acts to be restrained and assumes that the "qualified individual with disability" status of those unknown individuals whom the United States will represent is no longer subject to litigation. Defendants maintain the United States is seeking prematurely to determine an issue scheduled for litigation during the case's second remedial phase.

The United States replies, because I have already determined that Defendants' "no-reassignment" policy violates the ADA, an injunction should issue immediately to end Defendants' discriminatory policy. In this regard, the government cites several cases in which courts have issued injunctions after the liability phase and before the commencement of the remedial phase of bifurcated class action cases brought under Title VII of the Civil Rights Act of 1964.[2] Significantly, however, in each of these cases, the court had certified a class of plaintiffs in the liability phase.

Here, albeit in the related Civil Action No. 93–K–2263, I have denied class certification. *Davoll v. Webb*, 160 F.R.D. 142, 146 (D.Colo. 1995).[3] The Private Plaintiffs in Civil Action No. 93–K–2263 filed a motion to certify that suit as a class action pursuant to Federal Rules of Civil Procedure, Rule 23. In denying the motion, I cited various decisions, including two of the Tenth Circuit Court of Appeals,[4] in support of the principle that determination of whether a person has a disability as defined in ADA,[5] is to be decided through an individualized inquiry on a case-by-case basis. *Id.* at 145–46. I found Plaintiffs' definition for the proposed class[6] untenable and determined class certification inappropriate. *Id.* at 146.

In the instant case, on October 10, 1996, I entered summary judgment for the United States on liability on its Title I "pattern or practice" claim. *United States v. City &*

---

**2.** *See Holmes v. Continental Can Co.*, 706 F.2d 1144, 1157–58 (11th Cir.1983) (holding that injunctive or declaratory relief results if liability is found following Stage I of a bifurcated Title VII class action suit); *United States v. United States Steel Corp.*, 520 F.2d 1043, 1053 (5th Cir.1975) (finding, although a court may find liability and grant injunctive relief at the first stage of a bifurcated Title VII class action, it was improper at that stage "to require any particular discriminatee to prove personal monetary loss"); *Piva v. Xerox Corp.*, 70 F.R.D. 378, 389 (N.D.Cal.1975) (bifurcating a Title VII class action into one stage at which issues of liability and injunctive relief would be determined, and a second stage at which issues of backpay would be determined as to individual class members).

**3.** This was before February 15, 1996, the date the United States filed the instant action.

**4.** *See Bolton v. Scrivner, Inc.*, 36 F.3d 939, 944 (10th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1104, 130 L.Ed.2d 1071 (1995); *Welsh v. City of Tulsa, Okl.*, 977 F.2d 1415, 1417 (10th Cir.1992).

**5.** The ADA prohibits discrimination "against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). "Qualified individual with a disability" is defined as an "individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). "Disability" with respect to an individual means "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2).

**6.** The Private Plaintiffs proposed the following definition for the class:

> Former, present and future members of the Denver Police Department who have or will have disabilities; who have been or will be denied reasonable accommodation of their disabilities by defendants; who have been or will be retaliated against for assertion of ADA rights or opposition to discriminatory practices; who have been or will be aggrieved by defendants' ongoing failure to implement the provisions of the ADA for Denver Police Officers; who have been or will be denied equal protection and due process of law through defendants' unequal implementation of the ADA in defendants' workforce and ongoing disparate treatment of police officers with disabilities and constructive discharge of police officers with disabilities.

*Davoll v. Webb*, 160 F.R.D. at 144.

*County of Denver,* 943 F.Supp. at 1313. I found the United States had proved a prima facie case of liability by establishing (a) each defendant was a covered entity under Title I; (b) defendants' policy or practice barring the reassignment of officers with disabilities to vacant positions for which they were qualified was undisputed; and (c) defendants' policy or practice discriminated against "qualified individuals with disabilities" covered by Title I. *Id.* at 1309–13.

In granting summary judgment on the liability aspect of the Title I claim, I found, at that stage of the "pattern and practice" suit, the government was not required to show individual discrimination regarding each person for whom it sought relief. It sufficed for the government to show specific evidence of Defendants' discrimination regarding some of the employees that it sought to represent. *Id.* at 1308.

However, the premise of the decision granting summary judgment on the liability aspect of the Title I claim was that evidence that a particular person is a "qualified individual with a disability," while not necessary to show liability, is required to show that such person is among those individuals for whom relief may be sought. *Id.* at 1309. As the United States then argued, such issue is always resolved at the remedial stage of a bifurcated action, not at the liability stage. *Id.* (citing *International Bhd. of Teamsters v. United States,* 431 U.S. 324, 361, 97 S.Ct. 1843, 1867–68, 52 L.Ed.2d 396 (1977)).

Judgment has been entered on the liability aspect of the United States' Title I claim on the grounds that Defendants have a pattern or practice of discriminating against individuals with disabilities, as defined in the ADA. However, as discussed in relation to the motion for class certification in the related case, determination of whether an individual has a "disability" as defined in the ADA, is necessarily an individualized inquiry. Questions of individual relief such as the employment status of an individual, rejection of his or her request for reassignment to vacant positions, and entitlement to relief are deferred until the remedial phase.

Injunctive relief is an extraordinary remedy in equity which courts usually refuse to grant, unless the right to such relief is clear. *Weinberger v. Romero–Barcelo,* 456 U.S. 305, 311, 102 S.Ct. 1798, 1802–03, 72 L.Ed.2d 91 (1982). Speculative injury is not sufficient. "[T]he main prerequisite to obtaining injunctive relief is a finding that plaintiff is being threatened by some injury for which he has no adequate legal remedy." 11A Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, *Federal Practice and Procedure* § 2942 (2d ed.1995). Further, it is "a well-settled principle that an injunction must be narrowly tailored to remedy the harm shown." *Citizen Band Potawatomi Indian Tribe of Okla. v. Oklahoma Tax Commission,* 969 F.2d 943, 948 (10th Cir.1992).

Granting the injunctive relief sought by the United States at this time would violate these principles. Whether an individual qualifies as one with a disability under the ADA, involves a highly individualized inquiry. Here, the identity of the individuals on whose behalf the injunction is sought is less obvious than in cases involving other forms of discrimination, such as race, age, or gender. Nor is there here a defined class of persons on whose behalf the equitable relief is sought.

It is therefore not possible, at this stage of the litigation, to say that the right to such injunctive relief is clear. Nor would it be possible to tailor narrowly the injunction to remedy the harm shown when the identity of those affected is undetermined.

### III. *Conclusion.*

For the aforesaid reasons, I deny the United States' Motion for an Injunctive Order without prejudice to the right to file a renewed request for injunctive relief at the conclusion of the remedial phase of the case. Accordingly,

IT IS ORDERED THAT the United States' Motion for an Injunctive Order is DENIED WITHOUT PREJUDICE to the right to file a renewed request for injunctive relief at the conclusion of the remedial phase of Civil Action No. 96–K–370.