1998 OK CIV APP 111

**GREGHOL LIMITED PARTNERSHIP, on its own behalf and on behalf of all others similarly situated, Plaintiff/Appellee,**

v.

**ORYX ENERGY COMPANY and the Norge Marchand Unit, Defendant/Appellants.**

No. 90355.

Court of Civil Appeals of Oklahoma, Division No. 3.

April 28, 1998.

Certiorari Denied July 8, 1998.

Kandi Jepson Pate, James M. Little, John F. Dexter, Oklahoma City, for Plaintiff/Appellee.

James M. Peters, Sarah H. Stuhr, Christopher J. Perry, Oklahoma City, for Defendant/Appellants.

## OPINION

HANSEN, Judge.

¶1 Defendant/Appellants, Oryx Energy Company (Oryx), and Norge Marchand Unit (Unit), seek review of the trial court's order granting the motion of Plaintiff/Appellant, Greghol Limited Partnership (Greghol), to certify this case as a class action. The order found the four requirements of 12 O.S.1991 § 2023(A) had been met and one of the three alternative requirements of § 2023(B) was satisfied because issues of law and fact common to the members of the class, to wit, the deduction from royalty payments of post-production costs, predominated over questions affecting only individual members. On appeal, Oryx contends the record supports none of the trial court's findings except that of numerosity. We affirm.

¶2 The Norge Marchand Unit was created by the Oklahoma Corporation Commission in 1973. Oryx is the unit operator. Greghol owns an overriding royalty interest in a lease within the unit. Oryx owns almost 25% of the working interest in the unit, but does not own any interest in the lease underlying

Greghol's override. Greghol sued Oryx, Unit, and several other units, alleging Oryx, as unit operator of all the defendant units, charged overriding royalty interest owners and royalty owners post-production costs, marketing costs, administration costs, and costs incurred in gathering, compressing, treating, transporting, or dehydrating the gas produced. Greghol later dismissed several units, then sought class certification with members of the class being all non-participating interest owners in the remaining named units who held their interests under leases with one of various clauses providing for the interest to be free of costs.

¶ 3 At hearing on the motion, a Greghol employee testified the "remittance advices" from Oryx reflected deductions for marketing charges. An accountant for Oryx agreed under direct examination by Greghol's counsel that gas proceeds were "distributed the same proportionately to each override and royalty interest owner in the Norge Marchand Unit," and stated, "The only owner that is treated differently is the MMS[1]," because "[t]hey have certain provisions that they require a different settlement." She admitted Oryx Gas Marketing had deducted "an overhead fee," which was passed through proportionately to all override and royalty interest owners except the MMS. Under cross-examination by Oryx's counsel, the accountant testified Oryx sells the gas to Pan Energy for a contract price of 85 percent of the residue gas proceeds and 80 percent of the natural gas liquids proceeds. She agreed Oryx did not "take any deductions out of the proceeds it pays to any of the royalty owners or overriding royalty interest owners in the Norge Marchand Unit," and explained the apparent deduction for marketing charges on the remittance advices was "[b]ecause the Minerals Management Service requires that their reporting of payment be different, we have to show the 100 percent figures for them, and then show the 15 percent and 20 percent separately on separate lines on their report."

¶ 4 Greghol called as an expert witness an oil and gas attorney who testified the payment obligations created by Greghol's overriding royalty interest were typical of those created by most of the other overrides and oil and gas leases in Unit, except for four leases which "specifically provide for the ability to deduct post-production costs." He stated the common question of law was "may one deduct post-production costs from these types of owners which are named in the unit plans pursuant to 52 O.S. 287.1 as being other than a lessee." Oryx called as an expert witness an oil and gas attorney who testified he found 13 different types of royalty clauses, 16 different types of overriding royalty clauses, and various types of division orders, creating individual issues and resulting in different ways of paying royalty.

¶ 5 The trial court excluded owners from units other than the Norge Marchand, granted the motion to certify the class action, and defined the class as follows:

All royalty and overriding royalty interest owners (excluding Oryx Energy Company, its affiliates and any agency, department, or instrumentality of the United State [sic] of America) who, at any time on or after June 3, 1991, have been parties to the Norge Marchand Unit Plan as established by the Oklahoma Corporation Commission, and to whom Oryx Energy Company and the Norge Marchand Unit has [sic] the obligation to pay any portion of the royalties on gas produced and sold from the oil and gas wells comprising the Norge Marchand Unit.

¶ 6 A trial court's order granting class certification is entitled to great deference. *Perry v. Meek,* 1980 OK 151, 618 P.2d 934, 941. We will not disturb such an order unless abuse of discretion is shown. If the record does not support the conclusion that the requisites of 12 O.S.1991 § 2303(A) and (B) are present, then the trial court's action would be an abuse of discretion. *Shores v. First City Bank Corp.,* 1984 OK 67, 689 P.2d 299, 301. A close question should be resolved in favor of sustaining certification because the order is always subject to modification prior to judgment on the merits. *Perry v. Meek,* 618 P.2d at 940. The predominance of common questions of law or fact "is a qualitative rather than quantitative matter;" where a litany of individual issues are presented, "the crucial element of the test [is]

---

**1.** The Minerals Management Service is an arm of the federal government which manages minerals held in trust for Indian tribes. 25 U.S.C. § 4043(b)(4).

**599**

whether those very questions preclude the common from being predominant." *Mattoon,* 633 P.2d at 739.

¶ 7 Oryx and Unit contend there is *no* evidence in the record that common issues of fact or law exist and predominate. There is a contested issue of fact as to whether Oryx made any deductions from the gas proceeds when paying overriding royalty interest and royalty owners. If Oryx made no deductions at all, it has no liability to any of the class members regardless of the terms of their conveyances. This issue of fact, being critical to liability, predominates. If Oryx did make deductions, there is evidence in the record it did so treating all overriding royalty interest and royalty interest owners equally, again regardless of the terms of their conveyances. Therefore, individual issues created by the specific language of the conveyance instruments do not preclude the common issue, i.e. whether the deductions for post-production costs are proper, from being predominant. As in *Young v. West Edmond Hunton Lime Unit,* 1954 OK 195, 275 P.2d 304, 310, "[t]he legal questions raised in this action are of common or general interest to the many owners of royalty interests within the unit, and the character of the relief sought appears to be applicable to all." [2] The trial court did not abuse its discretion in finding common issues of law or fact existed and predominated.

¶ 8 Oryx and Unit contend the trial court improperly found Greghol satisfied the typicality and adequacy of representation requirements because the class definition included both overriding royalty interest and royalty interest owners and both those holding under Oryx leases and those holding under other leases in the unit. They argue Greghol's position as an overriding royalty owner holding under a lease not owned by Oryx prevents Greghol from being similarly situated to royalty owners and Oryx's lessors. However, the trial court's findings are supported by the record and are consistent with Oklahoma law. The Unit Plan treats overriding royalty interest owners and royalty owners as a single group, defining royalty owner as "an owner of an interest ... other than that of a Lessee." As unit operator, Oryx owes the same duties to royalty owners of other lessees within the unit as it does to royalty owners in its own leases. See *Leck v. Continental Oil Co.,* 1989 OK 173, 800 P.2d 224, 229, and 52 O.S.1991 § 287.8.[3]

¶ 9 The Oklahoma Supreme Court has not yet addressed whether overriding royalty owners and lessor/royalty owners are legally equivalent with regard to liability for post-production costs. However, the decision in *Mittelstaedt v. Santa Fe Minerals, Inc.,* 1998 OK 7, ¶ 18, 954 P.2d 1203 cited with approval the Colorado case of *Garman v. Conoco, Inc.,* 886 P.2d 652, 660 (Colo.1994). In *Garman,* the Colorado Supreme Court considered whether an overriding royalty interest in gas production was required to share post-production costs. It concluded overriding royalty interest owners are not obligated to share in the costs of making the gas marketable because an overriding royalty interest, like a royalty interest, is a non-cost bearing and non-risk bearing interest, and the owners of such nonworking interests have no right to participate in lease development decisions.

¶ 10 In *Wood v. TXO Production Corp.,* 1992 OK 100, 854 P.2d 880, 883, the Oklahoma Supreme Court relied on similar reasoning in deciding royalty owners are not required to share compression costs. For purposes of this appeal, we need not decide whether overriding royalty interest owners are entitled to equal treatment, absent express provisions of contracts to the contrary. Considering the state of the law in Oklahoma, it appears likely that the Oklahoma Supreme Court will so conclude, and that is sufficient to prevent us from finding the trial court abused its discretion in using Greghol

2. Although the trial court broadened the definition of the class to include even those interest owners whose leases specifically provided for deduction of post-production costs, Oryx and Unit do not challenge the order on this ground. We note the trial court retains the ability to modify the class or create subclasses. 12 O.S. 1991 § 2303(C) and (D). See also *Perry v. Meek,* 618 P.2d at 939.

3. The trial court properly limited the class to those "whom Oryx Energy Company and the Norge Marchand Unit has [sic] the obligation to pay any portion of the royalties on gas produced," thus eliminating those receiving royalties from proceeds of gas sold by others pursuant to the Unit Plan.

as the class representative. The trial court did not abuse its discretion in finding Greghol satisfied the requirements of typicality and adequacy of representation.

The order of the trial court is **AFFIRMED**.

ADAMS, J., concurs.

BUETTNER, Presiding Judge, dissenting:

I respectfully dissent. The facts demonstrate that there are numerous written agreements among the interest owners which would govern the issue of responsibility for post-production costs. Thus, individual contract provisions predominate over any proposed common issues. Likewise, there is little authority to find overriding royalty interest owners are to be treated identically with royalty interest owners. The source of the two interests are quite distinguishable.

Thus, I would find the plaintiff failed to meet the requirements for class action certification under § 2023(A)(2)(3) and (4) and § 2023(B)(3).