2000 OK 51

**KMC LEASING, INC., et al.,**

v.

**ROCKWELL–STANDARD CORP., et al.**

**No. 92,344.**

Supreme Court of Oklahoma.

June 27, 2000.

Robert G. McCampbell, Crowe & Dunlevy, Oklahoma City, OK, and Richard C. Coyle, Rex Browning, Perkins Coie, Seattle, WA, for Defendant/Appellee Twin Commander Aircraft Corporation.

David C. Johnston, Jr., Law Office of David C. Johnston, Jr., Oklahoma City, OK, and Fred J. Meier, Jeffrey A. Hage, Jonathan J. Cunningham, Winstead, Sechrest & Minick P.C., Dallas, TX, for Defendants/Appellees Rockwell–Standard Corporation, Rockwell International Corporation, Aero Commander Inc. and Gulfstream Aerospace Corporation.

Thomas A. Wallace, John W. Norman, John B. Norman, Norman, Edem, McNaughton & Wallace, Oklahoma City, OK, for Plaintiffs/Appellants KMC Leasing, Inc., Westak of Oregon, Inc., B & B Transportation, Inc., Provost & Umphrey Law Firm, L.L.P., Black Hawk Mining Company, Steven Myers & Associates, Inc., S–R Aviation, Inc., Andersen Construction Company, Inc., Praegitzer Industries, Inc., Challenge Tool and Manufacturing Company, Ltd., Golconda Capital Corp., John L. Kennamer, Umberb, Inc., Aspen Base Operation, Inc., Air Capitol S.R.L., Detroit Business Machines, Inc., Gay Company, L.C., Great Western Hotels Corporation, Hammill Manufacturing Company, Inc., N.A. Degerstrom, Inc., Structural Steel Services, Inc., Western Precooling Systems, Inc., Statewide Cooling, Inc., J. Charles Casebeer, M.D., Budget Motels, Inc. and Elliott Tarson, president of Twin Commander Owners Association, an unincorporated association each individually, and on behalf of the class herein defined.

WINCHESTER, J.

¶ 1 This matter concerns the motion of appellants, KMC Leasing, Inc., Westak of Oregon, Inc., B & B Transportation, Inc., Provost & Umphrey Law Firm, L.L.P., Black Hawk Mining Company, Steven Myers & Associates, Inc., S–R Aviation, Inc., Andersen Construction Company, Inc., Praegitzer Industries, Inc., Challenge Tool and Manufacturing Company, Ltd., Golconda Capital Corp., John L. Kennamer, Umberb, Inc., Aspen Base Operation, Inc., Air Capitol S.R.L., Detroit Business Machines, Inc., Gay Company, L.C., Great Western Hotels Corporation, Hammill Manufacturing Company, Inc., N.A. Degerstrom, Inc., Structural Steel Services, Inc., Western Precooling Systems, Inc., Statewide Cooling, Inc., J. Charles Casebeer, M.D., Budget Motels, Inc. and Elliott Tarson, president of Twin Commander Owners Association, an unincorporated association, each individually and on behalf of the class herein defined, to certify this action as a class action. The instant matter has its roots in an action filed by plaintiffs/appellants against defendants/appellees alleging negligent design, testing and manufacture of the Aero Commander aircraft, failure to disclose known defects and fraudulent concealment of the aircraft's alleged defective design of a component part of the Aero Commander aircraft's wing. Appellants assert hidden defects exist in the wing spar that were not detected in pre-purchase inspections. They seek damages for diminution in value, inspections the Federal Aviation Administration required them to conduct and repairs. The sole issue we address on certiorari is whether the trial court abused its discretion in denying appellants' motion to certify the instant action as a class action.

## FACTS AND PROCEDURAL HISTORY

¶ 2 Appellants are purchasers, owners or past owners of used aircraft designed, manufactured and initially sold by Rockwell International Corporation in Bethany, Oklahoma, between 1967 and 1979. The Rockwell entities held the original Type Certificates to these aircraft and had no contact with the aircraft after 1981. Appellee GAC held the Type Certificates from 1981 to 1989 and did not design, manufacture or sell any of the aircraft. Appellee Twin Commander acquired the Type Certificates in 1989, and also did not design, manufacture or sell any of the aircraft. Appellants purchased their aircraft used, from entities other than appellees. The purchases occurred in numerous states and foreign jurisdictions. None of the aircraft were housed, operated or purchased in Oklahoma.

¶ 3 The record shows alleged defects do not uniformly affect these aircraft. Some exhibit no signs of corrosion in the wing spar, others experience corrosion and require inspection while still others require repairs that vary in expense and frequency, including actual spar cap replacement. For those aircraft with corrosion, the degree and progression of the corrosion also varies. The first known discovery of corrosion occurred in 1985, in Australia. The Australian government issued an airworthiness directive which advised Australians to inspect the aircraft.

¶ 4 Prior to the instant appeal, the trial court granted partial summary judgment in favor of appellees on appellants' manufacturers' products liability claim. The court also

granted partial summary judgment in favor of Twin Commander on appellants' fraud claim. On appeal, the Court of Civil Appeals upheld partial summary judgment for Twin Commander as to owners of aircraft purchased prior to June 11, 1990, but reversed the trial court's grant of partial summary judgment against owners of aircraft purchased subsequent to that date. In a related appeal on attorneys' fees, summary judgment was affirmed as to the negligence claims. *See KMC Leasing Inc. v. Twin Commander Aircraft Corp.*, Case No. 91,398, ¶ 8 (July 2, 1999)(not for publication). We denied appellees' petition for writ of certiorari on June 25, 1996, and remanded the case to the trial court for further proceedings.

¶ 5 After remand, appellants filed a motion to certify the class action on September 25, 1997, nearly five years after they filed their initial lawsuit. The trial court denied appellants' motion to certify and appellants appealed. On December 15, 1999, the Court of Civil Appeals, Division III, reversed the trial court's denial of class certification and remanded the cause in an opinion released for publication. Appellees filed separate petitions for writs of certiorari to review the opinion of the Court of Civil Appeals. We granted the petitions by special order on March 14, 2000, and will treat them as though only one appeal were before us. The sole issue on appeal is whether the trial court abused its discretion when it denied appellants' motion to certify the action as a class action. We find the trial court did not abuse its discretion when it denied the motion to certify the action as a class action. The Court of Civil Appeals failed to apply the appropriate standard of review and improperly substituted its own judgment for that of the trial court.

¶ 6 In its opinion, the court certified a class under a definition not presented to the trial court and also certified a subclass of purchasers who bought their aircraft between June 11, 1990, and April 9, 1991, pursuant to 12 O.S.1991, § 2023(C)(4). The court also deemed Twin Commander a successor corporation to the other appellees. The holding that Twin Commander is liable as a successor of the Type Certificates issued by the FAA under 49 U.S.C. § 44704 certifying this aircraft meets federal safety standards, presents a question of first impression and impermissibly goes to the merits at the class certification stage. *Davoll v. Webb,* 160 F.R.D. 142, 143 (D.Colo.1995), *aff'd. by* 194 F.3d 1116 (10th Cir.(Colo.) 1999)(the merits of an action are not judged in ruling on a motion for class certification).

¶ 7 At the hearing before the trial court on March 27, 1998, appellants requested that the court certify a class consisting of current or prior owners of the Commander aircraft who owned the aircraft on May 14, 1991. Appellants also proposed certain subclasses consisting of class members who incurred expenses associated with recurring inspections of spar caps and those who replaced spar caps. Appellants later suggested the trial court certify a class that distinguished between those who were aircraft owners on May 14, 1991, before the Administrative Directive was issued, and those who purchased the aircraft after that date but before the last Administrative Directive of April 12, 1994. Appellants also suggested a separate class of thirteen members who purchased aircraft with a grain size problem. They then suggested the trial court adopt a test case basis approach for damages, followed by a suggestion that the court calculate a statistical matrix. Appellants also tried to persuade the trial court to certify this action as a class action to further the settlement of claims, stating at the hearing that many, if not most, cases settle after a court certifies them as class actions.

## STANDARD OF REVIEW

¶ 8 Reversal of a trial court's order denying certification requires a clear showing of abuse of discretion. *Mattoon v. City of Norman,* 1981 OK 92, ¶ 25, 633 P.2d 735, 740 (*appeal after remand* ). Denial of class action status is deemed to rest on an adequate record when any one of the five requisites for class certification appears to be absent. *Mattoon,* 1981 OK 92 at ¶ 1, 633 P.2d 735 at 736. The trial court's order denying class certification in *Mattoon* was a general order, as is the trial court's order in the instant case.

¶ 9 Since Oklahoma's class action scheme closely parallels that provided in the Federal Rules of Civil Procedure, we may look to federal authority for guidance regarding its rationale. *Shores v. First City Bank Corp.,* 1984 OK 67, ¶ 5, 689 P.2d 299, 301. The party who seeks certification has the burden of proving each of the requisite elements for a class action. *Davoll v. Webb,* 160 F.R.D. 142, 143 (Colo.1995) *aff'd. by* 194 F.3d 1116 (10th Cir.(Colo.)1999), citing *Anderson v. City of Albuquerque,* 690 F.2d 796, 799 (10th Cir.(N.M.) 1982).

> "The discretion granted to the trial court on the certification issue leaves the decision as to what method of trial is most efficient primarily to the court that is in the best position to determine the facts of the case, to appreciate the consequences of alternative methods of resolving the issues of the case and that is in the best position to select the most efficient method for their resolution."

*Boughton v. Cotter Corporation,* 65 F.3d 823, 826 (10th Cir.(Colo.)1995).

¶ 10 Just as the Tenth Circuit observed in *Boughton,* " . . . the issue on appeal is not whether the trial court could have certified a class but whether it was an abuse of discretion not to certify." 65 F.3d 823, 827. An abuse of discretion occurs when a court has, "based its decision on an erroneous conclusion of law or where there is no rational basis in evidence for the ruling." *Mann v. Reynolds,* 46 F.3d 1055, 1062 (10th Cir.(Okla.)1995).

¶ 11 The opinion does not contain any analysis under the appropriate standard of review, nor does it conclude that the trial court abused its discretion. We decline to duplicate the independent review process utilized by the 5th Circuit in *Pederson v. Louisiana State University,* 201 F.3d 388 (5th Cir.(La.) 2000), addressed in additional briefs filed by the parties. That opinion was vacated and superseded on rehearing by *Pederson v. Louisiana State University,* 213 F.3d 858, (5th Cir.(La.) 2000).

### STATUTORY REQUIREMENTS FOR CLASS CERTIFICATION

¶ 12 The criteria for certification of class actions in the state of Oklahoma are set out in 12 O.S.1991, § 2023. Subsection (A) contains four requirements which must be met along with at least one of three additional requirements set out in subsection (B). The requirements contained in subsection (A) of § 2023 are:

1. The class is so numerous that joinder of all members is impracticable;

2. There are questions of law or fact common to the class;

3. The claims or defenses of the representative parties are typical of the claims or defenses of the class; and

4. The representative parties will fairly and adequately protect the interests of the class.

Since we hold that the record before the trial court amply supports denial of class certification because the prerequisites in subsection (A) are not met, an analysis of the additional requirements in subsection (B) of § 2023 is unnecessary.

¶ 13 Appellants contend that the trial court based its order on reliance-related issues and misconstrued our decision in *Black Hawk Oil Co. v. Exxon Corp.,* 1998 OK 70, 969 P.2d 337. Since the trial court issued a general order, this is mere conjecture. Appellants also argue a general order that denies certification constitutes an abuse of discretion, citing our opinion in *Mattoon v. City of Norman,* 1981 OK 92, 633 P.2d 735(appeal after remand). *Mattoon* does not hold a general order denying certification constitutes an abuse of discretion. Indeed, we upheld a general order therein, without benefit of a hearing transcript. 1981 OK 92 at ¶ 4, 633 P.2d 735 at 737. *Mattoon* holds the record is adequate if one of the five prerequisites to class certification is not present. 1981 OK 92 at ¶ 1, 633 P.2d 735 at 736. Interestingly, appellants never raised their objection to the general order before the trial court. Absent explanation of the ruling by the trial court and absent a record to the contrary, we are under a duty to indulge the presumption of correctness with regard to the trial court's general order. We will presume the trial court, " . . . found every special thing necessary to be found to sustain

the general finding and conclusion." *Monarch Ins. Co. of Ohio v. Rippy,* 1962 OK 6, ¶ 11, 369 P.2d 622, 625. *See, also, Carpenter v. Carpenter,* 1982 OK 38, ¶ 10, 645 P.2d 476, 480 (trial court's decision is presumed to include a finding favorable to the successful party upon every fact necessary to support it). In the case at bar, we have a transcript of proceedings and a record that support several bases upon which the trial court could have denied certification. These include lack of numerosity, lack of predominance of common issues of law or of fact and lack of typicality.

¶ 14 Appellants argue appellees seek a ruling "tantamount to a declaration that a trial court's refusal to certify a class, made without reasons, is immune from appellate review." *See* response brief at p. 3. Such is not the case. On appeal, a trial court's general order that denies class certification is subject to the abuse of discretion standard of review.

### NUMEROSITY

¶ 15 To satisfy the numerosity requirement of § 2023(A)(1), the party who seeks certification " ... must first adequately define the class and then establish that it is so numerous that joinder of all members is impracticable." *Davoll v. Webb,* 160 F.R.D. 142, 144 (D.Colo.1995), *aff'd. by* 194 F.3d 1116 (10th Cir.(Colo.) 1999). "[N]ecessarily individualized inquiries are best suited to a case-by-case determination." *Davoll,* 160 F.R.D. at 146, citing *Chandler v. City of Dallas,* 2 F.3d 1385, 1396 (5th Cir.(Tex.)1993)(*appeal after remand*).

¶ 16 Appellants proposed three different class definitions to the trial court, none of which the court deemed a cognizable class. Appellants contend their proposed class definitions changed as they refined them over time. They also argue that *Sholer v. State Department of Public Safety,* 1999 OK CIV APP 100, 990 P.2d 294 supports certification. We find the facts of *Sholer* clearly distinguishable from the instant facts. In *Sholer,* the trial court certified a Class A of drivers who had paid multiple fees after July 6, 1990, and before July 8, 1993, and

were entitled to refunds of reinstatement fees, but declined to certify a Class B of drivers who had paid the unnecessary fees after July 7, 1993, even though Class B drivers were similarly situated to Class A drivers. The Court of Civil Appeals held therein that the denial was arbitrary. Unlike *Sholer,* the record in the case at bar evidences continued difficulty in defining a class. Corrosion is not uniform; repairs are not uniform; diminution in value is not uniform; purchase contracts are not uniform. There is no single course of conduct by appellees alleged to have caused injury and it is impossible for claims to be based upon one legal theory as to all appellees.

¶ 17 The number of class members embodied in each different definition presented to the trial court varies from approximately thirteen members of aircraft owners who allegedly experienced grain size problems (the record before the trial court shows thirteen out of ninety-seven aircraft were susceptible to the grain size problem), to nearly two thousand members of aircraft owners who allegedly were affected by spar cap problems. As to this latter proposed class, those members do not stand in identical situations with regard to appellees. During the March 27, 1998, hearing appellants also asked the trial court to certify as a class current or prior owners of Commander aircraft who owned aircraft on May 14, 1991, the date the first Administrative Directive was issued.

¶ 18 Appellants argue *Black Hawk Oil Co. v. Exxon Corp.,* 1998 OK 70, ¶ 17, 969 P.2d 337, 343 (*amended on denial of reh'g.*), supports certification and holds the numerosity test is met by numbers alone when the class size is in the hundreds. However, in the case at bar, not all of appellants' proposed classes are comprised of members in the hundreds and they cannot show joinder is impracticable. Appellants' numerous class definitions evidence the difficulty in defining a cognizable class. Appellants' failure to adequately define a class defeats the numerosity requirement § 2023(A)(1).

### PREDOMINANCE OF COMMON QUESTIONS OF LAW OR FACT

¶ 19 The record before us supports the trial court's denial of the motion to certi-

fy on the basis that few common questions of law or fact exist in the case at bar. The predominance of common questions of law or fact as a basis for class certification is a qualitative rather than a quantitative matter. *Greghol Ltd. Partnership v. Oryx Energy Co.*, 1998 OK CIV APP 111, ¶ 6, 959 P.2d 596, 599 (*cert. denied July 8, 1998*). Where a litany of individual issues is presented, the crucial element of the test is whether those very questions preclude the common from being predominant. *Greghol Ltd. Partnership*, 1998 OK CIV APP 111 at ¶ 6, 959 P.2d at 599.

### Questions of Law

¶ 20  Common questions of law or fact do not predominate in this action because class members and any representative with a potential claim against Twin Commander will not have a claim against the other appellees, who divested themselves of the Aero Commander aircraft Type Certificates prior to their acquisition by Twin Commander. Twin Commander is a corporate resident of the state of Washington and never has had any contact with the state of Oklahoma. Therefore, aside from the obvious issue of an Oklahoma court's personal jurisdiction over Twin Commander, there lies the choice of law issue. This single issue contains a plethora of additional sub-issues, including applicable statutes of limitations and the tolling provisions of each, applicable states' breach of implied warranty provisions and statute of limitations sections of the non-uniform Uniform Commercial Code, applicable choice of law statutes and applicable statutes concerning fraud and deceit. These sub-issues will apply differently to Twin Commander than to the other appellees, who arguably have some nexus to the state of Oklahoma. Although the determination of these issues goes to the merits of the instant case, their very existence precludes a finding of predominance as to common questions of law, if any.

¶ 21  It is apparent from the transcript of the trial court's hearing on certification that it pondered choice of law as a factor in its decision to deny certification. During the hearing, appellants failed to present an in-depth analysis of choice of law and appellees effectively demonstrated the quagmire of legal issues in this area that are not common to the proposed plaintiffs in each of the three classes presented.

### Questions of Fact

¶ 22  Whether or not the initial sales of these aircraft occurred in Oklahoma, as Appellants impliedly ask the court to assume, is an issue of fact that must be proven at the trial of this matter. It must involve an individual analysis of each used sale transaction and each previous sale transaction through the entire chain of ownership of each aircraft. As such, individual questions preclude common questions from being predominant.

¶ 23  The record establishes major differences in each appellee's different transactions with aircraft purchasers. The Rockwell entities designed, manufactured and sold these aircraft. GAC and Twin Commander held Type Certificates during different time intervals but did not design, manufacture or sell any of these aircraft. None of the aircraft were purchased in Oklahoma and none of the purchasers are Oklahoma citizens. Fact issues permeate determinations of the relation of each appellee's involvement with the aircraft to the Australian airworthiness directive issued after the corrosion discovery in 1985, to subsequent airworthiness directives issued by the Federal Aviation Administration, and to the different moments at which various class members received notice of these directives or notice of the corrosion issue. These fact questions are not common to all appellees.

¶ 24  In addition, it is logical and the record before the trial court indicates that individual issues predominate concerning the differing terms of hundreds of aircraft purchase contracts. Some contain clauses that stipulate what jurisdiction's law will apply, others contain disclaimers of warranties, still others contain virtually no terms. If the instant action were certified as a class action, the trial court would be forced to analyze each individual contract as to its disclaimers, warranties, applicable choice of law and statute of limitation. The trial court also would be required to analyze each individual class

member's date of notice, actual or constructive, of the particular issue affecting his aircraft, be it corrosion, grain size, fatigue, wing rib damage, cracks or improper brake structure, and whether or not a period existed in each individual class member's circumstances that might toll the applicable statute of limitation. Uncommon fact issues also exist regarding how many other potential class members obtained knowledge of the corrosion issue due to the Australian air worthiness directive issued in 1985. Clearly, the record before the trial court contained ample evidence that these determinations could not be accurately and fairly made on a class-wide basis, but that they must be made on an individual basis.

¶ 25 The trial court recognized the problems associated with litigating issues that involve four different alleged defects—corrosion, fatigue, cracks, improper brake structure and wing rib damage. The court noted each aircraft did not have all four of the defects and that this discrepancy would create problems of proof. The court also stated it would complicate issues for the jury and expressed concern that the jury would experience difficulty in understanding the evidence presented by all potential plaintiffs. This concern was not limited to damage assessment issues because the trial court stated that individual claims regarding both damages and liability would attach and cause numerous problems. We agree.

■ ¶ 26 Even though the potential inability of proposed class representatives to prove their fraud claims relates to the merits and is inappropriate to the certification stage, (see *Black Hawk Oil Co. v. Exxon Corp.*, 1998 OK 70, ¶ 18, 969 P.2d 337, 343 (*amended on denial of reh'g.*)) the process itself is appropriate for consideration. The record establishes the trial court's efforts to analyze how this process would operate, and how it would invoke the substantive laws of numerous states. Appellants failed to present a detailed analysis of the process and instead argued the trial court should apply Oklahoma law to every facet of every transaction involved in the case at bar. Proof regarding liability and damages will require the trial court to analyze fraud issues under differing laws of numerous jurisdictions. Thus, individuality of issues will predominate not only as to proof but also as to the very elements necessary to establish fraud.

¶ 27 Appellants argue our opinion in *Black Hawk Oil Co. v. Exxon Corp.*, 1998 OK 70, 969 P.2d 337 (*amended on denial of reh'g.*) additionally supports class certification because the only issue as to certification involves reliance and under *Black Hawk*, reliance goes to the merits and is inappropriate for consideration. Their analysis contains two flaws. First, reliance is not the only issue which blocks class certification, as discussed herein. Second, *Black Hawk* involved class members' who were parties to one of four form contracts and their rights rose or fell on the interpretation of those contracts, unlike the instant case which involves literally hundreds of different, non-uniform contracts, the interpretation of which will be governed by the laws of numerous jurisdictions. We find the trial court appropriately could have based its order on the fact appellants failed to meet the requirement that common questions of law or fact predominate under 12 O.S.1991, § 2023(A)(2).

## TYPICALITY

■ ¶ 28 The record before us reveals that the claims of the representative parties are not typical of the claims of the class as a whole. As stated above, those who have claims against Twin Commander will not have claims against the remaining appellants. Two of the class representatives will not have claims against Twin Commander because they were not owners of aircraft during the time period applicable to Twin Commander. *See* Twin Commander's Petition for Certiorari at pp. 3, 9–10. Appellants do not address this fact but instead argue one of the representatives has a potential claim against Twin Commander and thus class certification is appropriate. This ignores the fact that a representative's claims against Twin Commander will not be typical of class members' claims against other appellees. At most, a ten-month period exists during which a potential plaintiff must have acquired an aircraft to make a claim against Twin Commander. That period is as much as twenty-

five years for other appellees. Therefore, statutes of limitations arguments, breach of warranty claims and basic facts that bear on liability will not be typical.

¶ 29 Since Twin Commander did not design, manufacture or sell the aircraft, appellants' liability theory against it must differ from its liability theory against the Rockwell entities. Appellants concede any purchaser of an aircraft after April 9, 1991, has no fraud claim. Thus, a potential fraud claim against Twin Commander will focus on how many class members purchased aircraft between these two dates, not on how many aircraft were inspected or affected by service bulletins. Appellants concede certification of a class or a subclass is reserved for the trial court under our decision in *Private Truck Council of America, Inc. v. Oklahoma Tax Commission,* 1990 OK 54, n. 31, 806 P.2d 598, 606, n. 31, *vacated on other grounds,* 501 U.S. 1247, 111 S.Ct. 2882, 115 L.Ed.2d 1048 (1991), *decision on remand,* 1994 OK 96, 879 P.2d 137, *aff'd,* 515 U.S. 582, 115 S.Ct. 2351, 132 L.Ed.2d 509 (1995). The record establishes only four of the named plaintiffs purchased during this operative ten month period. Their claims are not typical of the claims of others who did not purchase during this period.

¶ 30 The instant case involves hundreds of contracts with differing terms regarding central issues such as breach of warranty and choice of law, thus defeating the typicality requirement set forth in § 2023(A)(3).

" ... [I]t is often necessary to analyze the substantive claims and defenses of the parties and the essential elements of those claims and defenses.... Nevertheless, there is a distinction between identifying the issues that the case will present for purposes of determining whether the requirements of Rule 23 have been met and deciding those issues on the merits."

*Davoll v. Webb,* 160 F.R.D. 142, 143 (D.Colo. 1995)(*aff'd by* 194 F.3d 1116 (10th Cir.(Colo.)1999) citing *Joseph v. General Motors Corp.,* 109 F.R.D. 635, 637–38 (D.Colo. 1986).

## CONCLUSION

¶ 31 Pursuant to Rule 1.11(k)(1), Rules of the Supreme Court of Oklahoma, we need not consider whether the proposed class representatives would adequately represent the class members because this issue is not raised by appellees in their petitions for certiorari. We are unpersuaded by the arguments of appellants and vacate the opinion of the Court of Civil Appeals.

**CERTIORARI PREVIOUSLY GRANTED; COURT OF CIVIL APPEALS OPINION VACATED; ORDER OF THE TRIAL COURT SUSTAINED.**

All Justices Concur.