2003 OK CIV APP 89

**Andy GIPSON, Plaintiff/Appellee,**

v.

**SPRINT COMMUNICATIONS COMPANY, L.P., Defendant/Appellant,**

and

**John Does I through X, Defendants.**

**No. 97,074.**

Court of Civil Appeals of Oklahoma, Division No. 3.

May 15, 2003.

Rehearing Denied June 25, 2003.

Certiorari Denied Oct. 13, 2003.

Harry Scoufos, Law Offices of Harry Scoufos, P.C., Sallisaw, OK, and Andrew P. Campbell, Campbell, Waller & Loper, LLC, Birmingham, AL, and Janet Varnell, Brian W. Warwick, Varnell & Warwick, PA, The Villages, FL, for Plaintiff/Appellee.

Charles D. Neal, Steidley & Neal, McAlester, OK, and Betty Outhier Williams, Gage & Williams Law Firm, Muskogee, OK, and J. Emmett Logan, Steven J. Boyd, Morrison & Hecker, L.L.P., Kansas City, MO, for Defendant/Appellant Sprint Communications Company, L.P.

Opinion by KENNETH L. BUETTNER, Presiding Judge.

¶1 Defendant/Appellant Sprint Communications Company, L.P. (Sprint) has filed an interlocutory appeal from the trial court's order certifying a class in this action which charges that Sprint exceeded the use allowed in certain railroad easements when Sprint installed fiber optic cable along railroad corridors. Plaintiff/Appellee Andy Gipson asserted that Sprint had trespassed and been unjustly enriched thereby. We hold that the trial court erred in concluding that Gipson's claim is typical of other putative class members, and that the class certified in this case is unmanageable because individual issues predominate over the common issues. We therefore find that the trial court abused its discretion in certifying this case as a class action proceeding. We remand for further proceedings in accordance with this opinion.

¶2 In his petition, Gipson alleged that Sprint had paid various railroads for permission to install and maintain fiber optic cable in underground conduits along railroad easements throughout the United States. Gipson alleged that the railroad easements did not allow any use beyond operation of a railroad, so that Sprint's installation of fiber optic cable without obtaining permission from or compensating landowners amounted to trespass. Gipson sought damages for trespass and unjust enrichment, as well as ejectment and removal of the fiber optic cable and related hardware.

¶3 Gipson filed his suit on behalf of himself and a class defined as

all persons owning an interest in land in the United States across which (Sprint) ha(s) installed fiber optics cable or other telecommunications cable without permission, without the use of legal process and without paying compensation, including land across which any railroad has a right of way easement and excluding right of ways owned by the railroad in fee.

Gipson asserted the class members were so numerous that joinder was impracticable and that each class member's damages were too small to justify the expense of separate lawsuits. Gipson also asserted that his claims were typical of those of the other class members. Gipson alleged three common questions of law and fact shared by the class members: 1) whether Sprint's actions constituted a trespass; 2) whether Sprint was unjustly enriched by its use of class members' property; and 3) whether class members were entitled to exclusive possession of their property, free of Sprint's fiber optic cables and hardware. Gipson next alleged that he had hired counsel who were familiar with class actions and that he would fairly and adequately represent the interests of the class. Gipson then alleged all of the grounds of 12 O.S.2001 § 2023(B) were present in the case. Gipson expanded on these allegations in his motion for class certification and in his memorandum of law in support of class certification.

¶4 Sprint responded with a memorandum in opposition to class certification in which it asserted that federal courts had unanimously held that fiber-optic cable right-of-way cases were not certifiable as class actions. Sprint argued that each potential class member would have to litigate the merits of his claim to class membership by proving his level of property interest, if any, in the right-of-way. Sprint raised the fact that the railroads were

given the rights-of-way in land grants, but that the various adjacent landowners could have obtained their properties through countless types of deeds and conveyances in the century since the land grants were made to the railroads. Sprint also argued there was no showing that the conveyance which established Gipson's right of way was typical of those of the remaining class members, and that therefore identifying class members presented an unmanageable task. Sprint contended that a class whose membership may only be determined by merits litigation may not be certified.

¶5 Sprint also argued that the trespass claim is governed by a two year limitations period and that Gipson knew of the cable as it was being laid in the 1980s, so that a defense available against Gipson's claim made it atypical as well. Sprint urged that Gipson would not adequately represent the interests of other class members whose cases would turn on different factual and legal determinations. Sprint asserted that common issues in the case do not predominate over individual issues. Sprint also asserted minitrials would be required to determine each class members' damages. Sprint lastly contended that choice of law issues precluded a nationwide class in this case.

¶6 Hearing on the motion to certify the class was held September 25, 2001.[1] An emergency hearing was held October 22, 2001, after Gipson notified the trial court that Sprint had attempted to settle the claims advanced in the case with landowners in Louisiana. Gipson asserted that Sprint argued in favor of the class for settlement purposes and that, accordingly, Sprint had deceived the trial court in arguing against certification in Oklahoma.

¶7 The trial court issued its order certifying the class November 15, 2001. The trial court defined the class certified as:

(a)ll persons owning a fee simple interest in land in the State of Oklahoma across which any railroad has a right-of-way, and excluding land owned by the railroad in fee simple where Sprint installed fiber optic cable or other telecommunications cable without permission, without the use of legal process and without paying compensation. Excluded from the Class are all parents, subsidiaries, and affiliates of the Defendant as well as all officers and directors of the Defendant. Property currently owned by State or Federal governments are also excluded from the Class.

Title 12 O.S.2001 § 2023(A) requires that 1) the proposed class be so numerous that joinder of all members is impracticable (numerosity); 2) there are questions of law or fact common to all the class (commonality); 3) the claims or defenses of the representative party are typical of the class (typicality); and 4) the representative will fairly and adequately protect the interests of the class (representation). The trial court determined that numerosity existed because the class included hundreds or thousands of Oklahomans. The trial court found eight questions of law and fact common to the class, and concluded that the commonality requirement was met.[2] The trial court noted that Sprint did not challenge commonality, but instead argued against typicality and predominance.[3]

---

1. After this case was filed, Sprint removed it to federal court, but the federal court determined that Gipson's claims did not reach the amount in controversy requirement for diversity jurisdiction and that the federal laws raised in defense by Sprint were not a core claim. The case was therefore remanded to the state court.

2. These common issues were: 1) whether Sprint installed the cable in the rights-of-way without class members' consent; 2) whether the installation of the cable was consistent with the use originally granted to the easement holder; 3) whether Sprint asserted any ownership or occupancy rights in the right-of-way corridors; 4) whether Sprint knew that such ownership assertions were false or whether such assertions were

made recklessly; 5) whether Sprint profited from its use of the rights-of-way; 6) whether a right-of-way for a particular purpose gives the right-of-way holder the right to license, sell, lease or dispose of subterranean cable rights; 7) whether the cable constitutes a trespass on class members' properties; and 8) whether Sprint has been unjustly enriched by its use of property belonging to class members.

3. The court held that this resulted in "an uncontradicted central common issue in this case concerning whether Sprint's conduct in laying its cable on property owned by the Class constitutes an impermissible trespass." The court also stated that "(p)roperty rights are particularly appropriate for judicial treatment in the state court

¶ 8 In analyzing the typicality requirement, the trial court explained that all the class members' claims are based on the legal theories of trespass and unjust enrichment. The trial court concluded that a determination of Gipson's claims will effect a common adjudication for all who own land along the same railroad corridor. The trial court also noted that the railroad easement traversing Gipson's property was created in an 1886 federal act which conveyed a railroad right-of-way over 100 miles in length and that the landowners along that corridor will all be affected by a determination of the effect of that one conveyance. The court also determined that there were only a few different types of conveyance documents involved and that the court believed it unlikely that they differed greatly or that the railroads would have purchased any fee interests when it could more cheaply acquire easements, so that all the conveyance documents will likely result in the same conclusion for class members.

¶ 9 The trial court acknowledged the evidence that of Gipson's three parcels, the deed conveying one of the parcels excludes the right-of-way from the conveyance. The court stated its conclusion that this did not defeat typicality because the right-of-way was included in the conveyances of Gipson's other two parcels. The trial court explained that any adjudication in the case simply would not apply to Gipson's first parcel. The trial court next found the statute of limita-

tions was not an issue in this case because the cable constituted a continuing trespass.

¶ 10 In addressing the adequacy of representation criteria, the trial court found that Gipson had retained counsel who had appeared before the trial court in several other class action cases and successfully served as class counsel in numerous states. The trial court also found no evidence that Gipson's interests in the case might be antagonistic to the interests of other class members.

¶ 11 The trial court also explained that it had found that the class proposed here was appropriate under 12 O.S.2001 §§ 2023(B)(1) and (B)(3).[4] The court noted that a case involving a declaration of common rights, which has the potential for inconsistent or varying individual adjudications, is "the quintessential case for certification" under § 2023(B)(1). The court found it apparent that Sprint would continue to maintain fiber optic cable in the railroad rights-of-way unless there is a common adjudication of the claims. The court also found that individual adjudications could result in inconsistent or varying results. The court stated its view that if Sprint's actions were found to be improper as to one landowner, that person's neighbor should be able to expect the same result, which could only be ensured by class treatment. The court also found that if the ejectment claim was successful, individual adjudications would be impractical in that Sprint would be unable to operate its commu-

---

system. Forcing thousands of individuals to file identical individual actions would burden the courts of this state unnecessarily."

4. Section 2023(B) provides:

An action may be maintained as a class action if the prerequisites of subsection A of this section (§ 2023(A)) and in addition:
1. The prosecution of separate actions by or against individual members of the class would create a risk of:
  a. inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
  b. adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudi-

cations or substantially impair or impede their ability to protect their interests; or
\* \* \*
3. The court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include:
  a. the interest of members of the class in individually controlling the prosecution or defense of separate actions,
  b. the extent and nature of any litigation concerning the controversy already commenced by or against members of the class,
  c. the desirability or undesirability of concentrating the litigation of the claims in the particular forum, and
  d. the difficulties likely to be encountered in the management of a class action.

nications lines due to breaks in the fiber optic network.

¶ 12 The trial court also found that certification of the class was appropriate under § 2023(B)(3). The trial court discounted Sprint's assertion that individual issues of ownership of the various rights-of-way predominate over the common issues. The court found that Sprint's argument "confuses the issues of class membership with interpretations regarding liability." The court restated its view that the railroad corridors all stem from "a relatively few" conveyance documents which created several corridors, each several hundred miles long. The court explained that the railroad conveyance documents are at issue here, rather than the individual deeds held by each class member.

¶ 13 The trial court also dismissed Sprint's contention that certification was improper because the damages determination would require a mini-trial for each class member. The court noted that class certification is proper where damages are capable of mathematical formula calculation. The trial court explained its view that the damages could be calculated in this case on a per mile basis— the same method used by Sprint to pay the railroads for its use of the easements. The court also found that the unjust enrichment claim would require Sprint to pay landowners the same amount it had paid the railroads, also on a per mile basis. The court rejected Sprint's argument that trespass damages must be based on decrease in the value of the land. Finally, the trial court rejected Sprint's contention that choice of law issues precluded predominance. The court found that only Oklahoma law will apply because it had limited the class to Oklahoma landowners only.

¶ 14 The trial court provided similar reasons for its conclusion that a class action would be a superior method of resolving this dispute. The trial court also noted its concern that Sprint chose not to disclose to the court that it was involved in settlement negotiations for similar cases in Illinois and Louisiana state courts. The court found it problematic that in those cases, Sprint was arguing that this type of case is appropriate for class treatment for purposes of settle-

ment, while at the same time it was arguing against class certification in this case. The court found that the elements of class certification, except manageability, must be present in a settlement proceeding as well as a trial proceeding. The trial court held that Sprint had made inconsistent arguments and that Sprint could not argue in this case that the § 2023 requirements were not met where it had already argued that those elements were met in the other identical cases. The trial court therefore certified the class and appointed Gipson as class representative.

¶ 15 We review the trial court's decision on class certification for an abuse of discretion. *Scoufos v. State Farm Fire & Cas. Co.*, 2001 OK 113, 41 P.3d 366, 367. An abuse of discretion occurs where the trial court has exercised its discretion "to an end or purpose not justified by, and clearly against, reason and evidence." *Patel v. OMH Med. Ctr. Inc.*, 1999 OK 33, 987 P.2d 1185, 1194. Specifically, if the record fails to show that the statutory requirements for class certification have been met, then we must conclude the trial court has abused its discretion. *Greghol Ltd. Partnership v. Oryx Energy Co.*, 1998 OK CIV APP 111, 959 P.2d 596, 598.

¶ 16 The party seeking class certification must show that the proposed class meets all the prerequisites of 12 O.S.2001 § 2023(A), as well as one of the requirements of 12 O.S.2001 § 2023(B). As will be discussed below, class certification is improper in this case because individual issues predominate to the extent that the typicality requirement has not been met and a class action is not the superior method of adjudicating this controversy.

¶ 17 Although Sprint challenges several aspects of the trial court's order, we first address whether the class certified in this case meets the statutory requirements. The potential number of class members easily meets the numerosity requirement. Sprint has not presented any serious challenge to the finding on adequacy of representation. We address the commonality requirement of § 2023(A)(2) along with the analysis of § 2023(B)(3).

¶ 18 Under § 2023(B)(3), we look to whether there are questions of law or fact common to the members of the class which predominate over any questions affecting only individual members, and whether a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Sprint asserts that federal courts have unanimously held that litigation of cases involving fiber optic cable in railroad rights-of-way are not suitable for class action treatment. These courts have concluded that individual issues affecting class members in this case predominate over common issues. It has been explained that the predominance prong of § 2023(B)(3) is similar to the commonality prong of § 2023(A)(2), but that "(m)ore demanding than the commonality requirement under 23(a), 'the predominance test asks whether a class suit is economical and efficient in the context of all issues in the suit.'" *Nicodemus v. Union Pacific Corp.,* 204 F.R.D. 479, 492 (D.Wyo. 2001), citing Newburg and Conte, *Newburg on Class Actions,* § 4.25 (3d ed.1982). In other words, most cases seeking certification of a class will have some common issues, but in order to meet the stricter requirement of § 2023(B), the common issues must predominate over the individual issues, to the degree that a class action proceeding is superior to individual adjudications. And, necessarily, a plaintiff who meets the predominance requirement of § 2023(B)(3) will have met the commonality requirement of § 2023(A)(2). See 7A Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, Federal Practice and Procedure: Civil 2d § 1763, p. 227 (2d. ed.1986).

¶ 19 For example, the trial court in this case found that whether Sprint had trespassed was a common issue. However, one federal district court has explained that in fiber optic cable cases, the common issues of whether the cable was laid and whether it constituted a trespass are not really issues at all: there is no dispute that the cable has been laid, and that, if the right-of-way involved does not allow for such cable, then the cable is a trespass. *Hebert v. Doyle Land Services, Inc., et al.,* (W.D.La.2002). That court clarified how individual issues predominate in such cases:

the real issues in contest,.. will require individualized consideration. The issue of ownership will involve questions relative to both the interests of the railroads and the interests of each of the putative class members.... The parties agree that the cable lies wholly within the rights of way of the various railroads. Plaintiffs contend that to the extent that the railroads' right of way consisted only of a servitude, that it did not have to (*sic*) right to authorize installation of the fiber optic cable. However, plaintiffs concede that as much as 30% of the rights of way were owned by the railroads in full ownership, and that in these areas no putative class member has a valid claim. Additionally, some of the rights of way were obtained conventionally and these agreements contained varying terms. Whether these agreements conveyed sufficient rights to the railroads to allow the railroads to grant a valid servitude to defendants will be subject to contention. Resolution of this issue will likely require consideration of the intent of the parties originally, and, where the language is ambiguous, the consideration of parole evidence with regard to individual agreements. There will also be contests over whether individual putative class members owned the property subject to the railroad right of way. This ... will likely involve a determination of whether a particular plaintiff owned land subject to the railroad right of way or merely owned land adjacent to the right of way.... It is also likely that there will be a number of varied title questions with regard to many tracts.

The *Hebert* court also found that the damages decision would require an individualized inquiry for each landowner.

¶ 20 Similarly, in *Isaacs v. Sprint Corporation, et al.,* 261 F.3d 679 (7th Cir.2001) the Seventh Circuit Court of Appeals found that individual issues predominated over any common issues in a fiber optic cable case. In *Isaacs,* the court addressed the problems posed by a nationwide class for claims arising under many states' laws. But the decision has implications even for classes limited to one state, particularly in a nearly identical case like this one. The problems of property

laws changing over time, of grants of property rights under a host of different explicit conveyances, deeds and prescriptions, all governed by different statutes and common law principles, with "intricate" issues of application to a particular property, are all posed by a statewide class asserting these claims under just one state's law.

¶ 21 In *Isaacs,* the court noted that the trial court would be faced with determining whether the railroad had obtained a particular right of way in fee simple, or if the railroad held only an easement, then the trial court would have to determine whether state law would allow the railroad to grant a sub-easement for laying the cable. Next, if the state's law allowed sub-easements, then the trial court would have to determine whether the particular easement involved included the right to grant such a sub-easement. The court noted that after those individual determinations, class members would be notified of their right to remain in the class and claim part of the judgment. The court explained that merits-based decisions would be required to determine the class, so that if the trial court ruled in favor of Sprint, all putative class members would choose to opt out, while if the merits decisions required to determine the class went in favor of the plaintiffs, "few if any class members will opt out and Sprint will be exposed to enormous potential liabilities." The court declared this to be a forbidden "one way intervention" which would result in unfair pressure on Sprint to settle the case. The *Isaacs* court concluded "(t)his is a nightmare of a class action."

¶ 22 Sprint also argues that the class proposed in this case is a prohibited "fail safe" class which would allow one-way intervention. This circumstance has been explained as one where the definition of the class bases class membership on the ability to bring a successful claim on the merits. See *Ostler v. Level 3 Communications, Inc.,* 2002 WL 31040337, (S.D.Ind.2002). That opinion further explained that where a decision on the merits of a putative class member's claim is needed to determine whether that person is a member of the class, the proposed class action is unmanageable "virtually by definition." *Id.*

¶ 23 The class certified in this case will require the following merits-based decisions before class membership is shown: 1) fee simple ownership of land in Oklahoma, 2) across which any railroad has a right-of-way, 3) but excluding land owned by the railroad in fee simple (where Sprint installed fiber optic cable or other telecommunications cable), 4) without permission, 5) without the use of legal process and 6) without paying compensation. The fact that so many individualized decisions will have to be made for each putative class members lends support to our conclusion that common issues are not predominant in this case.

¶ 24 The federal district court for the Western District of Wisconsin also addressed whether class status was proper in a fiber optic case involving a statewide case. In *Chambers v. MCI Worldcom,* No. 00–C–348–C, slip op. (W.D.Wisc.2001), the plaintiffs sought certification of a class of all landowners along the Union Pacific railroad right-of-way in Wisconsin who did not consent to the installation of fiber optic cable in the right-of-way by MCI. The court's explanation of the faults with the class definition illustrate the predominance of individual issues:

> the definition fails to communicate to landowners the objective information they need to determine whether they are within the proposed class. It is not sufficient that a person own land adjacent to the cable side of the right-of-way; that person must establish also that he or she owns the underlying (or superior) interest in the right-of-way where the railroad owns less than fee simple absolute. Moreover, identifying the class members through maps and tax records would demand extensive factual inquiry. Defendants have demonstrated that the process of matching the parcels to the current landowners is multi-stepped and fraught with difficulties.... Furthermore, no matter which party bears the burden of proof, the issue of consent to the installation must be determined in order to identify the proper members of the class. The definition requires extensive factual inquiry and therefore, is inadequate.

*Id.* at 12–13. In concluding that the class should not be certified, despite being limited

to landowners in only one state, the court in *Chambers* stated it had the same concerns as courts addressing certification of nationwide cases in railroad right-of-way cases: "the determination of property interests is an inherently factual inquiry that requires a careful review of each deed." *Id.* at 26–27.

¶ 25 In addition to predominance of common issues, § 2023(B)(3) also requires a finding that a class action is the superior method available for a fair and efficient adjudication of the controversy. But, it has been held that a predominance of individual issues detracts from superiority. *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 419 (5th Cir. 1998). Because trial of this matter as a class action would require a merits trial of each individual's claim to class membership, we are hard-pressed to agree that class adjudication is superior to other available methods.

¶ 26 Having outlined the individual issues which predominate in this case, we note that those same issues preclude a finding that Gipson's claim is typical of those of the other putative class members. The individual conveyances involved necessitate that potential class members will have myriad types of easements or full ownership in the railroad rights-of-way. For example, the land grant allegedly at issue here provides that the railroad right-of-way may be used for the purpose of installing telephone lines. So, it is entirely possible that certain landowners will have no claim for trespass at all, while other landowners may have acquired their lands subject to the right-of-way through a different conveyance which may not include telephone lines as a permitted use of the easement. Accordingly, there will not be a typical claim against Sprint in this case. See *Nudell v. Burlington, Northern and Santa Fe Railway Co.*, No. A3–01–41, 2002 WL 1543725 (D.N.D.2002) (holding that fiber optic cable cases turn on so many individual issues that the claims of the named plaintiffs are not typical); *Hallaba v. World-Com Network Services, Inc.*, 196 F.R.D. 630 (N.D.Okla.2000); *Chambers, supra,* slip op. at 19; *Swisher v. United States,* 189 F.R.D. 638, 641 (D.Kan.1999).

¶ 27 The trial court relied particularly on two state court decisions which approved certification of similar cases. We find obvious features distinguish those cases from this one. The Tennessee Supreme Court addressed an action for inverse condemnation of railroad rights-of-way in which fiber optic cable had been laid in the case of *Meighan v. U.S. Sprint Communications Co.,* 924 S.W.2d 632 (Tenn.1996). In *Meighan,* the plaintiff sought to certify a statewide class of landowners on whose land Sprint installed fiber optic cable within railroad rights-of-way. The plaintiff alleged that the cable constituted a taking and a trespass. The trial court certified the class, but limited it to one county. The trial court also dismissed the trespass claim. The Tennessee Court of Appeals reversed the certification, but the Tennessee Supreme Court reinstated the class. The court explained that the case was governed by its previous holding that the installation of telephone cable constituted a taking under Tennessee law. *Id.* at 635. The court explained that class certification was justified because the takings involved could potentially result in hundreds of lawsuits and inconsistent decisions regarding the trespass and punitive damages claims would be likely. *Id.* at 638. The court dispensed with Sprint's contention that the only remaining issue was the individual damages assessments by holding that the case was appropriate for an aggregate damages award which would be split among class members. *Id.* at 639. The court also reversed the decision limiting the class to one county and remanded for redetermination of the class limits. *Id.* The court also noted that under Tennessee law, an aggrieved landowner has two options: to file an inverse condemnation proceeding or to bring a trespass claim. The court therefore reversed the dismissal of the trespass claim.

¶ 28 First we note there has been no inverse condemnation claim in this case. Nor has any Oklahoma decision declared that any installation of fiber optic cable constitutes a taking. In fact, the Federal District Court for the Western District of Oklahoma has held that the 1887 land grant which established the railroad rights-of-way in Oklahoma included installation of telephone cable as a permitted purpose, and that the land grant gave the railroads authority to sell or lease

the rights-of-way for permitted purposes. *Demming v. State of Oklahoma, ex rel. Dept. of Transportation and U.S. Sprint Communications Co.*, No. Civ. 90–1317–R (W.D.Okla.1991).[5] More importantly, however, we find the Tennessee Supreme Court chose to ignore the extensive federal holdings outlined above which make clear the intricate individualized inquiry required for each potential class member, which make a class action unmanageable under these facts. As a specific example, the Tennessee court held that the issues of damages did not preclude class certification because the case was appropriate for an aggregate damages award to be divided among class members. However, Sprint correctly points out that the measure of damages for trespass is the difference in the value of the land before the trespass and the value after the trespass. It is undisputed that if Sprint is ultimately held liable here, hundreds of landowners owning different size tracts in both urban and rural areas will be affected. We agree with Sprint that individual trials on the issue of damages will be required, which would negate any efficiency gained in a class proceeding.

¶ 29 The Indiana Superior Court approved the certification of a nationwide class in the case of *Hinshaw v. AT & T Corp.*, 1998 WL 1799019 (Ind.Super. Aug 24, 1998). *Hinshaw* involved facts similar to the instant case, except that the fiber optic cable was laid by AT & T Corp. rather than Sprint. The *Hinshaw* opinion similarly ignores the difficulties in managing such a class that the federal courts have observed. In *Hinshaw*, the court focused heavily on evidence that Sprint may have pushed ahead its installation of fiber optic cable in rights-of-way while it was aware it may be using the rights-of-way without regard for whether the easements allowed non-railroad uses, and without obtaining permission from adjacent landowners. *Id.* at ¶¶ 12–22. This appears to be a case of the court punishing Sprint (in advance of any decision on liability) by certifying a class, in spite of the overwhelming individualized issues enumerated in many other cases.

¶ 30 Additionally, the *Hinshaw* court offered the following quote from the Tennessee Supreme Court: "(i)t is almost everywhere held that the erection of a line of telegraph over the right of way of a railroad company, not to be used in the operation of the railroad, but for purely commercial purposes, imposes an additional burden on the fee, and the landowner is entitled to additional compensation from the telegraph company." [6] That statement is contrary to the holding in *Demming, supra,* that installation of telephone lines is a permitted use of railroad rights-of-way in at least one railroad land grant affecting Oklahoma property owners. And, the reliance on this statement attempts to resolve the issue of liability rather than address the elements required for class certification. The *Hinshaw* court concluded that all the requirements for class action were met—not only all of the requirements of Rule 23(A), but also each of the requirements of Rule 23(B).[7] *Id.* at ¶¶ 53–92. The court made no mention of the federal cases outlining the extensive individual inquiries involved, the potential for a prohibited one-way intervention circumstance, or the unmanageability of such a class action under these facts. *Id.* Instead, the *Hinshaw* court chose to rely only on the Tennessee holdings and prior Indiana cases on the same issues. We are unpersuaded by these other state cases that the individual issues do not predominate over the common issues in this case.

¶ 31 We finally address the relevance of Sprint having argued in support of approval of a settlement class in an identical case in Louisiana. The trial court concluded that because Sprint had argued in support of a settlement class in a similar case in Louisiana, then Sprint had acknowledged that class certification was appropriate. In its motion for approval of a settlement class in Louisi-

---

5. See also *Bogart v. Caprock Comm. Corp.*, 2003 OK 38, 69 P.3d 266, which held that installation of fiber optic cable within a public road easement does not impose an increased servitude on the land which would entitle the landowner to additional compensation.

6. Citing *Buhl v. U.S. Sprint Communications Co.*, 840 S.W.2d 904, 912 (Tenn.1992).

7. These rules mirror our § 2023(A) and § 2023(B), as well as Rule 23(A) and Rule 23(B) of the Federal Rules of Civil Procedure.

ana, Sprint asserted that the class elements were met only for settlement purposes, but not for litigation purposes. Sprint's contention was that its agreement to settle had eliminated the individual issues of standing, statute of limitations, and damages, all of which precluded class certification for litigation purposes.

¶ 32 The U.S. Supreme Court has explained that settlement is relevant to whether certification is proper, but settlement is not de facto support for certification of a class for trial. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). In *Amchem*, the Supreme Court noted the different issues involved in class certification for settlement purposes as compared to certification of a class for litigation:

> Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, ... for the proposal is that there be no trial. But other specifications of the Rule—those designed to protect absentees by blocking unwarranted or overbroad class definitions-demand undiluted, even heightened, attention in the settlement context. Such attention is of vital importance, for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold. See Rule 23(c), (d). [FN16]
>
> > FN16. Portions of the opinion dissenting in part appear to assume that settlement counts only one way—in favor of certification.... To the extent that is the dissent's meaning, we disagree. Settlement, though a relevant factor, does not inevitably signal that class-action certification should be granted more readily than it would be were the case to be litigated.....
>
> Federal courts, in any case, lack authority to substitute for Rule 23's certification criteria a standard never adopted—that if a

settlement is "fair," then certification is proper. Applying to this case criteria the rulemakers set, we conclude that the Third Circuit's appraisal is essentially correct. Although that court should have acknowledged that settlement is a factor in the calculus, a remand is not warranted on that account. The Court of Appeals' opinion amply demonstrates why—with or without a settlement on the table—the sprawling class the District Court certified does not satisfy Rule 23's requirements.

521 U.S. at 620–622, 117 S.Ct. 2231. This passage makes clear that although the settlement class motion was a relevant consideration, the predominating individual issues do not negate the conclusion that this case is "a nightmare of a class action" for litigation purposes.

¶ 33 Based on our finding that the typicality requirement of § 2023(A)(3) has not been met and that the overwhelming individual issues predominate over the common issues in this case, we find that the trial court abused its discretion in certifying the class in this case.[8] We therefore need not address the trial court's decision that certification was appropriate under § 2023(B)(1). This matter is REVERSED for proceedings consistent with this opinion.

JOPLIN, C.J., and MITCHELL, J., sitting by designation, concur.

---

8. Sprint has advised this court in its "Fifth Notice of Supplemental Authority" that the Third Judicial Circuit Court for the State of Illinois has certified a nationwide class in the case of *Poor v. Sprint*, No. 99–L–421, filed February 20, 2003.

Our decision does not end the attempts to litigate, via class action, Sprint's liability for the installation of fiber optic cable in railroad corridors.